Judge Marshall
delivered the Opinion of the Court.
The bill alleges that, in the spring of 1832, the complainant Conweil and his partner, William Tinker, formed a partnership with James Sandidge, since deceased, for the erection and working of a steam saw mill, near the city of Maysville; that Conwell and Tinker,being, partners in another business, were jointly to advance one half of the funds necessary for this undertaking, and to receive one half of the profits, &c. and Sandidge’s portion of' the advances and proceeds was to be an equal half; that the two former advanced towards the purchase of ground and the erection and completion of the mill, $2,174 95, and Sandidge only $ 1,144 91; that, on the 15th day of December, 1832, the mill being just completed, Tinker sold out to Conwell all his interest in it, including his share of their joint advances, and that, on the 25th of the same month, Sandidge sold out his interest to Corwine and Clarke, by whom, in conjunction with Conwell, the mill was afterwards carried on. And the complainant, alleging that he had never been paid for the excess of his advances towards the erection of the mill, &c., prays that, an account be taken of the same, and that Sandidge’s administrator be decreed to pay one half thereof.
The administrator, alleging ignorance of the terms on which the partnership was formed; of the advances made by the parties respectively, and of the sale by Tinker to *211 Con well, requires proof of these facts; but alleges that, by the sale of Sandidge to Corwine and Clarke, they were to take the interest and occupy, in all respects, the place of Sandidge in the firm, and that this was understood and consented to by all the parties. As evidence of this fact, and in bar of the demand set up in the bill, he exhibits and relies upon a release to his intestate, signed by all the other parties, by which, after stating the sale of Sandidge’s interest to Clarke and Corwine, and in consideration of that sale, they “release the said Sandidge from all liability to pay any of the debts due by said steam saw mill, and do hereby release them (him) fully and amply from all liability to pay any of the debts (or) demands which may be brought against said establishment.”
In the absence of proof as to the terms of a partnership, the presumption is, that the interest and liability of each individual member of the firm, is the same; or that the members, having furnished unequal proportions of the capital, own the stock in the same proportions, and are liable for disbursements, and entitled to profits, each in proportion to his interest; and this rule holds, it seems, where the partnership was formed between a company of two or more partners in other business, and another individual.
The Circuit Court being of opinion that, the liability of Sandidge on account of the excess of advances made by Conwell and Tinker, was released or discharged by this instrument, dismissed the bill; and the complainant prosecutes a writ of error.
The terms of the original partnership not being satisfactorily proved by any evidence in the cause, the presumption would be — either, that each of the three partners was to furnish an equal share of the capital, and to be bound equally for expenses &c. or that the interest of each in the concern was to be in proportion to the capital actually advanced by him. In the first case, the advances made by Sandidge, being more than one third of the whole amount advanced by the three partners, up to the time of his quitting the concern, there was no deficiency on his part, for which he could be liable, either to the firm, or the other partners, or either of them individually. In the second case, Conwell and Tinker were compensated for their over advances, by a correspondent interest in the concern, and could not look to Sandidge for' remuneration; nor could they require further advances from him, according to the terms of the association. In either case, the instrument above referred to, certainly released or indemnified Sandidge, as to all debts of the firm not then paid by either of the partners, and thus released him from all responsibility to any of them, on account of any part of this transaction.
Two partners being, by agreement, equal in interest, are each bound to contribute an equal share of the advances required; but ’ one falls short, and - the other makes up the deficiency.— The defaulting partner sells out his interest to a stranger, and the other unites with the purchaser in releasing the retiring partner from all debts and liabilities on account of the firm: held that this release extends to all claims which the continuing partner had upon the retiring partner, on account of the inequalities in their advances ; for, when two or more are equal partners, and one furnishes more than his due share of funds for the use of the firm, the excess constitutes a debt due by the firm, not by the other partner—to him who made the advances; and if one fails to contribute his due share, the deficit is a debt due by him individually to the firm.
But admitting, that the terms of the original association were substantially such as are alleged by the complainant, we are of opinion that, the facts, as stated in the bill, combined with the recitals and operation of the release would lead to the same result, viz: that Sandidge was discharged from all further liability to the firm and to Conwell, on account, either of the excess in the advances of the latter, or of the deficiency in his own.
The facts now assumed, ave, first—that Conwell and Tinker on the one side, and Sandidge on the other, being bound to contribute equally to the erection of the mill, &c. the former had in fact contributed about two thirds, and the latter only about one third, to that object when the mill was completed. But the contributions made by Conwell and Tinker, were clearly not advances to Sandidge; but to the firm, and were properly chargeable to it. A certain portion was contributed according to their obligation, as partners, and they were not entitled to withdraw it, except upon quitting or terminating the concern, and then, upon a settlement of profit and loss; but for the excess, they were creditors of the firm, as much so as any stranger would have been by advancing money to it. Sandidge, on the other hand, being bound to contribute, not to Conwell and Tinker, but to the firm, one half of the amount necessary for accomplishing its object, was debtor to the firm'to the amount that is contribution was deficient. He was not thus a debtor by reason of having received any thing from the firm or any of its members, but under his obligation, as a partner and as a party to the original association, to contribute one half of the expense, &c. Suppose then, that the actual contributions made by the parties, in the proportion stated, had completed the mill, leaving the firm free of debt, except to Conwell and Tinker, and with nothing due to it from any stranger; and that, at that juncture, the mill being worth exactly its cost, the partnership had been dissolved, and Sandidge had withdrawn from the firm, with the assent of the other partners, leaving them the sole proprietors of the establishment. Under these circumstances, Sandidge would undoubtedly have received or been entitled to something for his advances *213 made; but on no principle, could he be under any obligation to make up by actual payment the deficiency in his contribution. For by the dissolution of the partnership, .the agreement on which his obligation arose, would have been rescinded, as to its future operation upon him, and his character of partner to which it attached, would have been at an end. If it were otherwise, he would be bound to contribute to a concern in which he had no interest: which would be unreasonable; or he would still have an interest proportioned to the contribution he was bound to make, which would be inconsistent with the fact of dissolution. The fact that the contributions actually made, did not discharge all expenses, but left the firm indebted to strangers to some extent, would not alter the effects of a dissolution as between the parties themselves, though as to such strangers, it would be in-operative.
Where one partner in a firm, by general consent, transfers his interest to a stranger, who takes the place of the vendor in the firm, the effect is to dissolve the partnership, and rescind the partnership contract, so far as the retiring partner is' concerned; and he is thereby exonerated from his obligations to contribute to the stock of the company, or to his partners, altho’ he may have contributed less, or they more, than was required by the terms of the partnership: his obligations in those respects—unless it is otherwise agreed—devolve upon his successor in the firm.
Second. The sale of Sandidge’s interest, with the assent of Conwell and Tinker, and the admission of his vendees into the firm, as owning and representing his interest, which facts appear from the bill and release, was a dissolution of the old firm as to Sandidge, which, ipso facto, terminated, as between the parties, the operation and effect of the original agreement of association, put an end to Sandidge’s duties and relations as a partner and discharged him from any further contribution to the firm, and from any liabilty to compensate his former partners for the excess of their contribution, unless these consequences were specially provided against, of which there is no evidence, nor indeed is it pretended. Whether these facts alone necessarily had the effect of substituting Sandidge’s vendees in his place, as to the duties imposed by the original partnership agreement, and of rendering them directly liable to make up the deficiency in his contribution, or whether, without further agreement, Conwell and Tinker, or the former as representing both, should find compensation for the excess of their advances in a corresponding extension of their interest in the concern, or by subjecting the mill, &c. to its payment, need not be decided in this case.
For, third — if there was any doubt upon the facts *214 which we have been considering, as to the termination of, Sandidge’s liability as a member of the first firm, to pay the demand of Conwell growing out of the excess of is contribution—that doubt would be removed by the instrument of writing, by which Conwell, Tinker, Corwine, and Clarke, unite in releasing Sandidge from all liability to pay any demands which may be brought against the establishment. The object and intent of this instrument unquestionably was, to secure Sandidge against any responsibility for pre-existing demands against the firm of which he had been a member, and to give it this operation, or indeed any operation at all, (for the debtors could not properly release a creditor,) it must be construed as a covenant to indemnify Sandidge against all such demands. The claim of Conwell, or of Conwell and Tinker, being, as before shown, a demand against the first firm, is clearly embraced by the instrument, and its payment is, as we are inclined to think, thereby assumed, or thrown upon the new firm. But be this as it may, Sandidge is indemnified against it, or released from it, and Conwell, as a party to the instrument, is bound by it, and could not, if there were no other obstacle, make Sandidge, or his representative, liable to the demand now asserted.
On looking to the evidence, we find nothing which should affect the conclusion at which we have arrived, as to the effect of the facts which have been noticed. On the contrary, it is corroborated by several circumstances: first — Corwine and Clarke gave for Sandidge’s interest about the amount which he had advanced to the firm, and there is no proof that the mill was worth less than it cost. Second — Tinker seems to have understood (though without knowing the particulars of the contract of sale,) that they were to occupy in all respects the place of Sandidge; and Conwell seems to have understood the subject in the same way, or at least to have made that impression upon Phillips, who has deposed in the cause.
Corwine and Clarke do, indeed, say in their depositions, that when the release was to be signed, Sandidge requested Conwell to release him from this particular *215 claim, which he refused to do. But Tinker, who was present, heard nothing of it. And Corwine and Clarke have such an interest in throwing the responsibility upon Sandidge, as, if it docs not render them wholly incompetent, detracts at least from the weight of their testimony. — But, admitting the request and refusal to have been made as stated by them, it did not create a liability, but only proves that, the parties may have supposed one to exist, when, upon the facts now appearing, the law determines that it did not exist, and that the special release, which may have been asked for out of abundant caution, was not necessary to terminate it.
As to Conwell’s being a party to the general release— we have no doubt, from the evidence, that he authorized Tinker to sign it for him, and that he understood its object and effect to be, as we have stated, to secure San-didge from liability on account of any demands against the old firm, and to assume their payment by the new one. Sandidge’s discharge from liability to make further contribution, or to remunerate Conwell for the excess of his contribution, was the consequence of the release thus understood, and of the dissolution of the partnership, and of the partnership agreement, so far as he was concerned.
In every view of the case, the complaina nt has no equity against Sandidge’s representative, and the bill was, therefore, properly dismissed.