# Conwell *against* Sandidge's Administrator &c.

[Messrs. Payne and Waller for plaintiff: Mr. Hord for defendants.]

FROM THE CIRCUIT COURT FOR MASON COUNTY.

Judge MARSHALL delivered the Opinion of the Court.

CONWELL AND SANDIDGE having been partners in the purchase of a lot and the erection of a steam saw mill thereon, in the town of Maysville, upon the terms that they were to contribute equally to these objects, and to share equally in the lot and mill and the profits which might result from working it; and Conwell having, up to the time when the mill was completed, in December, 1830, contributed nearly two thirds, and Sandidge a little more than one third, of the advances which had then been made, leaving unpaid the price agreed to be given

CHANCERY.

June 15.

Statement of the case.

VIII. 35

Spring Term
1839.

Conwell
vs
Sandidge's Administrator &c.

for the lot, and perhaps some other debts incurred in the erection of the mill, at that juncture, Sandidge, with the consent of Conwell, sold out his interest to Corwine and Clark, who were admitted into the firm in his place, by Conwell; and Conwell, Corwine and Clark executed a writing to Sandidge, whereby, in consideration of his having sold all the right, title and interest which he owned in the lot, mill and appurtenances, to Corwine and Clarke, they indemnify him against all liability for the debts of the firm, and for any demands which may be brought against it.

In 1835, Sandidge having previously departed this life, Conwell filed a bill against his administrator, praying to be repaid out of the personal estate of Sandidge in his hands, the excess of his advances, which were alleged to have amounted to twenty one hundred and seventy four dollars ninety five cents, while those of Sandidge amounted only to the sum of eleven hundred and forty four dollars ninety one cents, up to the time of the sale to Corwine and Clark.

The administrator answered, relying upon the circumstances attending the sale by Sandidge to Corwine and Clark, and especially on the writing before stated, as discharging Sandidge from all liability on account of the claim set up in the bill. And on these grounds that bill was dismissed by the Circuit Court, and the decree of dismissal was affirmed by this Court, in an opinion reported in 5 *Dana*, 210—which is referred to as showing the facts and principles then involved and decided.

After the affirmance of the decree on the bill of 1835, Conwell filed the present bill, in which, in addition to the facts stated in the former one, he alleges that Sandidge's administrator, having failed to obtain payment from Corwine and Clark for the interest in the mill &c. sold to them, had obtained a decree for the sale of that interest as being one half of the establishment, upon a mortgage executed by them to Sandidge, to secure the purchase money. He refers to the record of the suit on the mortgage, as a part of his bill, and making Corwine and Clark and Sandidge's administrator defendants, he prays that the decree be enjoined until his case is heard, and

that he may be remunerated for the excess of his advances, either by a proportional extension of his interest in the mill &c. or by satisfying his claim out of the half decreed to be sold, before the claim of Sandidge's estate for the purchase money of the same half should be paid. This bill was answered by the administrator alone, who relies upon the same facts as in his answer to the former bill, and sets up, as a bar to this suit, the decree upon that bill, and makes the entire record and proceedings in the former case a part of his answer in this. Upon these pleadings and exhibits and a single deposition proving the amount of advances by Conwell and Sandidge, as alleged by the complainant, the Circuit Court, on the hearing dismissed the bill, and Conwell brings the case before this Court, by writ of error.

*First.* The first question to be noticed, is whether the decree upon the former bill, is a bar to the relief sought by this. It is to be observed that Conwell as complainant, and Sandidge's administrator as defendant, were the only parties to the former bill; that the demand made therein was of a personal debt against Sandidge, which was sought to be enforced against his administrator. No lien was asserted by the complainant; no mortgage was set up by the defendant. But the latter, so far from denying that the complainant had a lien, or from interposing any obstacle to its enforcement, filed a cross bill bringing Corwine and Clark before the Court; and asserting therein, that, under the circumstances attending their introduction into the firm, they, and not his intestate, were thereafter responsible to Conwell, alleges, apparently as a consequence of that position, that Conwell had a lien upon all the partnership stock for his indemnity; and prays that if he, the administrator, should be made responsible to Conwell, the Court may substitute him in the place of Conwell, and give him the benefit of

One of two partners in a mill had advanced twice as much of the expenditures as the other; when the latter (with the consent of the former,) sold out to 2 others, who took his place in the partnership; and the 3 members of the new firm executed a writing indemnifying the retiring partner against all debts & liabilities of the partnership. He took a mortgage, also, from his vendees, upon the interest he sold them, to secure the purchase money.—The retired partner died, and his former partner filed a bill against his adm'r, to recover one half of the amount that he had advanced,

more than the decedent had advanced, for the firm, while they were equal partners—claiming it merely as an individual debt of the decedent to himself. His bill was dismissed upon the ground that, the demand was properly a debt *of the partnership*, from which the retired partner was exonerated, and which was cast upon the firm as newly constituted, by the sale, and especially by the indemnity:—*Held* that the decree, dismissing the bill (as above,) is no bar to a subsequent suit by the same complainant, asserting the same demand against the existing partnership, and to enforce a lien on the partnership property for its payment—as a lien superior to the mortgage. For the questions, of the liability of the new firm, the existence of the lien, its superiority to the mortgage, were not involved in the former suit.

the lien. Conwell, in answer, denies that there was any such change of liability, or that he ever agreed, or was bound to look to Corwine and Clark for remuneration, and seeming, as he does throughout that case, to regard his demand as a purely personal one against Sandidge, he says nothing about the lien. The Court being of opinion that Sandidge's administrator was not liable to the demand, dismissed the original bill, and the cross bill fell of course.

Waiving all argument upon these facts, we think it is perfectly manifest that, the question as to the lien not only was not decided in the former case, but that it did not and could not arise upon the original bill, as a substantive ground of relief; and consequently, neither the question of its existence, nor the right of enforcing it, was concluded by the dismissal of that bill. The only matter which was concluded, or ever decided, by that decree was, that Sandidge did not continue liable after the transfer of his interest, and that his administrator, therefore, could not be charged with the debt. The administrator there urged, as a ground for coming to this conclusion, that Corwine and Clark were liable, and that the complainant had a lien to secure this liability. And if the decree, which determines that he is not responsible, does not impliedly affirm the existence of one or both of these grounds, it certainly is *not, in* the slightest degree, inconsistent with either of them, nor with the position that Conwell may have had a lien upon the partnership stock, while Sandidge was a partner, and that that lien was not divested by the introduction of Corwine and Clark in his place, whether they became thereby immediately liable for the demand, or not. And most obviously, that decree cannot now be relied on as establishing the priority of Sandidge's mortgage, which was not set up or even referred to by the administrator in that suit, over Conwell's lien, if he has any for advances made before the date of the mortgage. We consider every question and claim arising on the facts except the question as to the personal liability of Sandidge after he left the firm, and the dependent question as to the liability of his estate in the hands of his admin-

istrator, as being now as completely open to enquiry and decision as if the former bill had never been filed, and it is only as between Conwell and the administrator of Sandidge, that these two questions are concluded by the former decree.

2. But it seems to have been supposed, and it is contended in support of the present decree, that if the dismissal of the former bill does not absolutely bar this suit, the opinion of this Court affirming that decree, negatives the complainant's right to the relief now sought. It will be seen, however, on reference to that opinion, that it does not undertake to decide any question not then in issue between the parties, upon the bill and answer. The general conclusion, that " in every view of the case, the complainant had no equity against Sandidge's administrator, and the bill was therefore properly dismissed," must necessarily be limited to the case as presented to this Court by the record, if not to the case as presented in the opinion itself. It has already been shown that the conflicting equities now in question were not presented in that case; and they were, therefore, not included in any view of it which the Court had taken, or could properly take. It is true, the question whether Conwell had the lien which he now asserts, was stated by the Court, in discussing the main question whether Sandidge had been discharged from all liability for the reimbursement of Conwell. But the decision of it was explicitly waived, as being unnecessary, for the reason that, if upon the other facts which had been noticed, the discharge of Sandidge were doubtful, it was sufficiently established by the writing of indemnity above mentioned, without any reference to the question whether Conwell's remedy was against the mill property, or against Corwine and Clark, who had come into the firm in the place of Sandidge, or against both. We may add that, as it is entirely evident that the direct affirmation, that one or both of these latter remedies existed in favor of Conwell, would not have weakened, but would rather have strengthened the conclusion, ' that he had no equity against Sandidge's administrator,' who asserted no right or interest in con-

Spring Term 1839.

Conwell
vs
Sandidge's Administrator &c.

Expressions used by the Court of Appeals in delivering an opinion must be understood as limited to the case presented in the record, if not to that stated in the opinion; not as concluding any right not litigated.

Spring Term
1839.

Conwell
vs
Sandidge's Ad-
ministrator &c.

When a partner-
ship is closed by
the intervention
of a court of eq.
the court orders
a sale of the part
nership property;
and, (the debts
&c. due to stran-
gers, being first
paid,) each part-
ner who has made
advances, beyond
his due share, on
account of the
firm, or to whom
there is a balance
due from the part
nership, is reim-
bursed or paid
out of the part-
nership funds; &
if any one has
failed to furnish
his due share of
capital or advan-
ces, the deficit
constitutes a debt
from him to the
firm, which may
be retained out of
his share in the
division; and, af-
ter the several
partners are thus
made equal, the
funds and effects
then remaining
as joint stock,
will be divided
among them, ac-
cording to the
terms of the part
nership. Each
partner has thus
*a lien* on the part
nership stock,
for his extra ad-
vances, or the
balance in his fa-
vor on the part-
nership account
—which is, in ef-
fect, a lien on the
share of each of
the other part-
ners —— which,
though it may not
be enforced be-
fore a dissolu-
tion, continues

flict with either of them, but insisted that the complain-
ant had a right to resort to either, or at any rate to the
lien; so, it is equally clear that, the general conclusion
referred to, did not include in its negation either of these
remedies, and especially that it did not deny the lien.

3. This case then being left to be decided according
to its own merits, subject only to the just application of
the reasoning advanced and the principles established
by the opinion in the former case between the same
parties, we proceed to enquire whether Conwell had any
lien upon Sandidge's interest in the mill property, for
the reimbursement of his advances; and if he had, whe-
ther and how far, that lien is still subsisting and entitled
to precedence in this contest with the mortgage upon
the same interest executed by Sandidge's vendees to se-
cure the purchase money.

On the 25th of December, 1830, when Sandidge sold
to Corwine and Clark, Conwell had advanced one thou-
sand and thirty dollars four cents more than Sandidge.
If then no other contributions remained to be made, or
if Sandidge had refused to make further contribution,
and Conwell could not be otherwise reimbursed, or was
unwilling to make further advances, he might have ap-
pealed to a Court of Equity to settle the accounts and
close the concern; by a sale of the partnership effects,
and a just distribution of the proceeds. In this distri-
bution he would have been entitled to the entire sum of
one thousand and thirty dollars four cents, before San-
didge could have come in for any share. As between
the partners at least, this equitable right operates as a
lien upon the partnership stock in favor of the creditor
partner. *Collier on Partnership,* 65–6. And as it affects
the interest of the other partner, only to the extent of
one half of the sum due to the creditor partner, it is in
effect a lien upon that interest only to that extent. This
lien is perhaps not enforcible except upon a dissolution
of the partnership; but it exists at all times while the
stock remains partnership property, and to the extent of
one half of the sum in which one partner is creditor of
the firm beyond the credits of the other, is a burthen
upon the interest of the latter. So that, as between the

partners, the share of each partner is only his interest, according to the terms of partnership, in so much of the stock or its proceeds, as may remain after the satisfaction of the debts due to other partners, as well as of those due to strangers.

as long as the property remains joint stock. So, where a partner sells out, the purchaser takes only the interest which his vendor was entitled to, according to these principles: that is, takes it subject to such reduction of the nominal amount, as may be caused by reimbursing other partners for their extra advances &c.—or making up the vendor's deficit to the firm.

On the 25th of December, 1830, the interest of Sandidge in the partnership property, as compared with that of Conwell, was one half of the joint stock subject to the burthen of equalizing the contributions on the two interests, or of reimbursing to Conwell one half of the difference. This burthen might, of course, have been diminished or removed in the further operations of the firm, either by Conwell's receiving from the profits, more than was received by Sandidge, to the extent of the full amount of the difference in the respective sums advanced, or by further contributions made by Sandidge alone, so as to equalize their respective advances, or to reduce the difference, or by a direct payment to Conwell of one half of the difference, which perhaps might have been enforced upon the original agreement.

If, instead of considering Conwell a creditor of the firm to the amount of the actual difference between the contributions made by him and those made by Sandidge, he be considered as a creditor, and Sandidge be considered as a debtor, to the firm in such sums, respectively, as the contributions of the former may have exceeded, and those of the latter may have fallen below, the one half which each was to advance, the result would be substantially the same; Sandidge's interest, nominally one half, would be subject to the same burthen or lien.

This being the condition and extent of Sandidge's interest when he was about to make sale of it, on the 25th

Where new partners came into a firm by purchase of a retiring partner's interest, a-greeing, at the same time, to indemnify him against all debts of the partnership, the presumption must be, that they had a sufficient knowledge of the state of the partnership affairs; and, if their vendor was debtor to the firm, at the time of the sale, the purchasers must be presumed to have known it, and cannot be viewed as purchasers without notice of the consequential lien (*ut sup.*) upon the share purchased. And, even if they had no actual notice, the lien of another partner upon the share sold, would not be affected, unless he participated in some deception practised in the sale. Consequently, where a partner sold out, while his partner had a lien on the partnership stock, and therefore on the share sold, for extra advances, and the vendor took a mortgage upon it for the purchase money, *the lien* is an elder and better equity than the mortgage, and the sum secured by the lien must be paid out of the partnership effects, before any portion of them can be applied to the mortgage debt. But the mortgage takes precedence of the lien, for advances made subsequent to its date. And the amount secured by the lien, may be varied by inequalities in the subsequent advances, or receipts, of the several partners.

of December, 1830, the question is, whether by the sale then made to Corwine and Clark, whereby they were introduced into the firm in the place of Sandidge, and with the consent of Conwell, or by the agreement of indemnity then executed by Conwell, Corwine and Clark to Sandidge, or by the mortgage from Corwine and Clark to Sandidge, the interest of which he had previously held as partner was released from its burthen or in any manner enlarged; or came back to him as mortgagee in any better plight than that in which it had been held and sold by him the moment before. We do not perceive that any or all of these circumstances could have produced this effect. There are cases in which a title becomes relieved of an incumbrance upon it, by passing from one person to another who has no notice of the incumbrance, and a merely equitable or implied lien may be lost by taking additional security. But this case does not come within either of these predicaments.

The necessary presumption from all the facts, is that Corwine and Clark knew with reasonable certainty the state of the accounts of the concern into which they were about to enter as partners. They expressly indemnified Sandidge against all liability on account of demands against the firm, and they gave him for his interest only a few dollars more than the amount of his advances. The inference is, that they had notice of the facts, and that they knowingly took his interest subject to its burthen; as indeed, they probably must have done even if they had been ignorant of the facts; unless they had been injuriously deceived by the acts or with the co-operation of Conwell. And as Conwell took no additional security for his advances, not having taken even a promise of remuneration from Corwine and Clark, and being, as it would seem, ignorant, up to the date of the opinion of this Court before referred to, that he had lost his remedy against Sandidge, and incredulous as to the existence of any other, it cannot be that any implied liability which may have devolved upon Corwine and Clark in consequence of their purchasing Sandidge's interest, should be deemed sufficient to divest his lien, not for the benefit of Corwine and Clark, but of Sandidge,

against whom up to the moment of the sale, the same lien had existed upon the same property, as a security for his own obligation, which by the sale devolved upon them. The discharge of Sandidge from all personal liability to Conwell, so far as it is implied from the facts independently of the agreement of indemnity, rests mainly upon the basis that the partnership stock remained liable after the sale as before, and so far as it results from the written agreement, the same fact seems to furnish the principal, if not the only, consideration for Conwell's execution of that instrument. Sandidge was discharged, because he left the property subject to his obligations growing out of his connection with it, and because he substituted other persons in his place. And after he has received the full benefit of both of these considerations, in being discharged from Conwell's demand, it would seem to be both unreasonable and unjust, that he should be permitted to deprive Conwell of the only substantial security left to him, by appropriating the property to the discharge of his own debt; and as it does not appear that Conwell was privy to the mortgage, and as, if he had been, it does not appear that he gave any ground to Sandidge to consider him as waiving any lien in his favor, we are of opinion, that the existence of the mortgage furnishes no presumption against the continuance of the lien.

Notwithstanding the discharge of Sandidge, Conwell's demand remained against the new firm; and, as we think, it remained as a charge upon the partnership stock, and especially upon the interest which Sandidge had owned, unaffected by his sale of that interest and by the mortgage taken to secure the price. It follows that, on selling the interest of Corwine and Clark, considered as one half of the mill property, the proceeds of the sale should be first appropriated to the demand of Conwell against that interest, being one half of the difference between the sum contributed by him and that contributed by Sandidge, to be credited by any amount of profits of the mill which he may received over one half thereof, and also by any advances which Corwine and Clark may have made on account of the firm, be-
viii. 36

yond one half of all the advances made since they came into it. Conwell, however, is not entitled to precedence for any demand against the firm arising since the date of the mortgage, but such demand, if there be any, should be postponed.

To ascertain the extent to which the priority is given to Conwell's demand, an account should be taken of the advances made by the parties respectively, up to the sale of Sandidge's interest to Corwine and Clark (Conwell being entitled to the benefit of those made by Tinker,) and also, an account of the advances made, the expenses incurred, and the profits received, by the partners respectively, since that sale. And as Conwell is not, as he certainly should have been, a party to the bill and decree for closing the mortgage, it will be more appropriate that the account should be taken, and the sale decreed and made in this suit, than in the suit on the mortgage, unless the proper parties should be made in the latter suit, or unless the two suits should be consolidated.

*To a bill to fore-close a mortgage which some of the members of a partnership have made upon their interest in the stock, their part-ner is a necessa-ry party.*

Wherefore, the decree is reversed and the cause remanded for further proceedings as above directed.