————o————

HENRY DuPONT, *et al.*, Plaintiffs in Error, *vs.* CHARLES McLARAN, CHARLES M. WILLIAMS AND GEORGE S. SAXTON, Defendants in Error.

1. *Partnership—Transfer of interest in, amounts to mortgage, when—Subsequent powers of mortgagor in firm.*—By the conditions of an agreement a member transferred his interest in a firm as a collateral security for the payment of a debt; but the transfer contemplated a continuance of his interest and authority in the firm. *Held*, that the instrument was merely a mortgage and did not effect a dissolution of the partnership; that he could agree to a dissolution and to an appraisement and inventory to ascertain his final interest; that his co-partners might take the stock at the value so ascertained, they being liable as trustees for the proceeds, and responsible for any fraud or unfairness in the arrangement as in an ordinary sale for payment of debts.

2. *Partnership—Sale of assets by court of equity.*—When partners cannot agree, a court of equity on proper application will order a sale of the property in order to ascertain its value.

3. *Costs—Discretion of court in reference.*—Where in suit on account defendant denied plaintiff's right to recover and claimed a judgment for a certain sum in his own behalf, and the cause was referred and judgment given for plaintiff, the court was held to have no discretion to charge a portion of the costs to plaintiff. Section 18 of the chapter on costs (Wagn. Stat., 344) has no application to such case.

*Error to St. Louis Circuit Court.*

*Martin & Lackland,* for Defendants in Error.

I. It has been held that an absolute assignment of the share of a partner in a firm does not necessarily operate as a disso-

lution. If he continues in the firm, to do business, as before, there is no dissolution. (Receiver vs. Goodwin, 1 Halst., 334; State vs. Quick, 10 Iowa, 451; Taft vs. Buffum, 14 Pick., 322; Buford vs. Weely, 2 Dev. Eq., 481; Ferrero vs. Buhlmeyer, 34 How. Pr., 33; Bank vs. Fowle, 4 Johns Eq., 8.)

If it does not operate as a dissolution, then he remains, if at all, clothed with all the powers of a partner. He can also, at a dissolution, do all that a partner is authorized to do in respect to the disposition of the assets and payment of the debts.

II. The instrument of April 13th, 1869, was only a temporary mortgage, and after its execution Saxton remained in equity as well as in fact, owner and proprietor of the mortgaged share. (4 Kent Com. [4th Ed.] 134; Smith vs. Beattie, 31 N. Y., 542; Holmes vs. Crane, 2 Pick., 610; Langdon vs. Buel, 9 Wend., 83; Robinson vs. Campbell, 8 Mo., 365; Dean vs. Davis, 12 Mo., 112; Woods vs. Hildebrand, 46 Mo., 284; Kennett vs. Plummer, 28 Mo., 145; Raynor vs. Wilson, 6 Hill, 469; Astor vs. Hoyt, 5 Wend., 615.)

III. In addition to his authority as a mortgaging partner, he remained in possession by the consent of plaintiffs, representing the third interest mortgaged to them. A person taking a mortgage on the interest of a partner, takes it subject to his dominion and control as a partner, in respect to all the uses and purposes of the firm, within the scope of its business. The mortgagee takes it subject to the claims of creditors, and to the claims of co-partners. (Receiver vs. Goodwin, *supra*; Glynn vs. Phetteplace, 26 Mich., 383.) By what authority in law can a mortgagee, before foreclosure, prevent the dominion and management of the partner? It is admitted that a mortgagee has a right to an account from all the partners. (Bentley vs. Bates, 4 Y. & C., Ex. 182; Faucet vs. Whitehouse, 1 R. & M., 132; Wilson vs. Greenwood, 1 Swanst., 471.)

IV. The charge of $502 to Saxton's private account, taking it from the general expense account, was only the correction of an error. It should have been so charged originally.

V. There was no error in imposing one-third of the costs of adjusting this partnership upon the plaintiffs. The reference and settlement of the accounts was as much for their interest as the defendants. The chancellor has a discretion in the adjudication of costs. (Shields vs. Bogliolo, 7 Mo., 134; Walton vs. Walton, 19 Mo., 667.)

*T. L. Blakeman,* for Plaintiffs in Error.

I. Saxton had no authority to become a party to the disposal of the stock and assets of McLaran, Saxton & Williams, at the dissolution. He had, by the assignment of April 13th, 1869, conveyed all his interest, capital stock and profits, to plaintiffs in error. McLaran and Williams had held Saxton's interest in trust for plaintiffs in error from the 1st of April, but at the dissolution their trust was closed, and they were bound to account to plaintiffs in error for the whole of Saxton's interest in the concern.

Saxton had no power to dispose of the property at a valuation. (Sto. Partn., § 351; Sigourney vs. Munn, 7 Conn., 20.)

II. The decree of the court, compelling the plaintiff in error to pay one-third of the costs of this action, was a gross violation of the rights of plaintiffs. (Dan. Chy. Pr., 1458, 1461, and cases there cited; Hunn vs. Norton, 1 Hopkins, 344.)

Hough, Judge, delivered the opinion of the court.

On the 13th day of April, 1869, the defendant, Saxton, being then a member of the firm of McLaran, Saxton & Williams, and indebted to the plaintiffs in the sum of $7,888.47, executed and delivered to the plaintiffs, with the knowledge and consent of McLaran & Williams, the following agreement in writing:

"This agreement made and entered into this the 13th day of April, A. D., 1869, by and between George S. Saxton, of the city of St. Louis, of the one part, and Henry DuPont, Elenthere I. DuPont, Samuel DuPont and Eugene Du Pont of Wilmington, Del., partners trading under the firm name

of E. I. DuPont, De Nemours & Co., of the other part,"
Witnesseth, That, whereas the said George Saxton is justly
indebted to the said E. I. DuPont, De Nemours & Co., in
the sum of $7,888.47 due by three promissory notes made by
said Saxton, bearing the same date of this instrument, pay-
able one day after date thereof to said E. I. DuPont, De Ne-
mours & Co. * *

And, whereas, the said George Saxton is now one of the
firm of McLaran, Saxton & Williams, and has in said firm the
sum of $4,380.26 capital stock or interest therein, and is en-
titled to one-third interest in the net profits of said firm.

And whereas, the said E. S. DuPont, De Nemours & Co.,
are desirous and willing that said Saxton shall have a reason-
able opportunity of paying said sum without injury to him-
self, or removing his said interest out of said firm of McLaran,
Saxton & Williams, and the said Saxton being willing to
secure the said E. I. DuPont, De Nemours & Co., in the pay-
ment of the said sum of money, doth hereby convey to them
his interest in said firm of McLaran, Saxton & Williams, as
collateral security under the following stipulations and con-
ditions, viz:—In consideration of said indebtedness of $7,-
888.47, and the further consideration that said Saxton be
given time to work out said debt by continuing his interest
in said firm of McLaran, Saxton & Williams, for the space of
three years until said debt shall be paid, or said firm dis-
solved, and also the sum of one dollar in hand, paid by said
DuPont, De Nemours & Co., to said Saxton, the said George
S. Saxton, doth hereby sell, transfer, assign and convey to
said E. I. DuPont, De Nemours & Co., all the principal or
capital stock or interest he has in said firm of McLaran, Saxton
& Williams, together with all the accumulating profits thereof
for the space of three years or longer, as the case may be, ex-
cept the sum of two hundred and fifty dollars per month, to
be paid to said Saxton monthly by C. M. Williams or Chas.
McLaran, the other partners of said firm, or in case of neces-
sity to be determined by said Williams or McLaran, to ex-
ceed that sum not beyond four hundred dollars per annum,
over and above said mentioned sum.

It is further understood and agreed that the said E. I. Du-Pont, De Nemours & Co. are to receive the amount of one of said notes and interest thereon, each year, if the profits due said Saxton, after deducting the said allowance above stated should amount to that sum, until the whole amount due on said notes shall be paid, or in case the three years shall expire, or said firm of McLaran, Saxton & Williams shall be dissolved before the same shall be paid; then, and in either of these events, the whole amount due to said Saxton out of the firm of McLaran, Saxton & Williams, or so much thereof as shall be sufficient to satisfy said debt, all interest and costs, shall be paid by said firm to E. I. DuPont, De Nemours & Co. And the said George S. Saxton doth hereby agree that the said Charles McLaran and Charles M. Williams shall hold, manage and control said interest of said Saxton, in conformity with this agreement, to be paid as herein above stated and agreed. The remainder, after paying said debt, interest and costs, if any, is to go to the said Saxton, or his legal representatives.

It is further understood and agreed that this instrument is not to be so construed as to prevent said DuPont, De Nemours & Co. from availing themselves of any other opportunity whereby they might make or secure their said debt. * *

In witness whereof, the said George S. Saxton has hereto set his hand and affixed his seal, the day and date above written."

(Signed) GEORGE S. SAXTON. (Seal.)

The defendants being unable to get along harmoniously together, dissolved their co-partnership on the 20th day of September, 1869, and published the following notice of dissolution:

St. Louis, Sept. 20, 1869.

"The firm of McLaran, Saxton & Williams has this day been dissolved by mutual consent, to take immediate effect.

McLaran and Williams are alone authorized to receive monies due the late firm, and will settle all its liabilities."

        (Signed)          CHARLES McLARAN,
                             GEORGE S. SAXTON,
                             CHARLES M. WILLIAMS.

"Referring to the above, we will continue the jobbing hardware business at the same stand under the firm name of McLaran, Williams & Co."

        (Signed)          CHARLES McLARAN,
                             CHARLES M. WILLIAMS.

"Referring to the above, I will advise my friends that I can still be found with the above firm."

        (Signed)          GEORGE S. SAXTON.

At the same time they entered into the following agreement:

"It is mutually agreed, in dissolving the firm of McLaran, Saxton & Williams, that, provided Mr. George S. Saxton performs the duties of salesman to the satisfaction of McLaran, Williams & Co., up to the first day of January, 1870, he shall be entitled to the same interest in profits as if he had remained in the firm up to that time, inventory of stock and fixtures to be taken as near the first day of January as practicable and settlement made, fixtures and old or damaged stock to be appraised by three employees remaining in the house on the first of January."

        (Signed)          CHARLES McLARAN,
                             GEORGE S. SAXTON,
                             CHARLES M. WILLIAMS.

In pursuance of this agreement an inventory and appraisement were made of the stock on hand on the first day of January, 1870, and McLaran & Williams, with the consent of Saxton, took all of said stock at its appraised value, and proceeded to collect the notes and accounts, and pay the debts and settle up the business of the firm of McLaran, Saxton & Williams. Immediately after the dissolution the plaintiffs notified McLaran and Williams not to pay anything to Sax-

ton, and required them to account to plaintiff for Saxton's interest in the firm. Statements of the defendant Saxton's interest were made to the plaintiffs and their agents, at different times, and some correspondence and several interviews were had between the representatives of the respective parties, without arriving at any settlement, and on the 3rd day of February, 1872, the present suit was instituted to ascertain and recover the amount of Saxton's interest.

The testimony is very voluminous, covering about two hundred pages of the record, and we cannot see that any useful purpose would be subserved by attempting to make even a synopsis of it.

The case was tried before a referee, who found that the appraised value, at which McLaran and Williams took the interest of Saxton in the stock on hand, was reasonable and fair. He started an account between the parties, up to January 1870, and gave judgment against McLaran and Williams and in favor of the plaintiffs, for the amount of Saxton's interest at that date, in the sum of eight hundred and eighty-eight dollars and thirty-two cents, and for one-third of the uncollected notes and accounts, which amounted in the aggregate to the sum of $11,940.43.

The plaintiffs in error excepted to the referee's report on the ground that the referee erred in finding that the stock and assets had been purchased or could be purchased by McLaran and Williams of Saxton, and for a refusal on the part of the referee to compel them to account for profits made in the sale of said stock after January 1st, 1870.

The transfer of an item of $502.95 from the general expense account to Saxton's private account, after the dissolution, which was allowed by the referee, was also excepted to.

By the judgment of the court confirming the report and findings of the referee, the plaintiffs were required to pay one-third of the costs, and this is complained of as error. The judgment was affirmed at general term, and plaintiffs have brought this case here by writ of error.

The conveyance made by Saxton of his interest in the firm of McLaran, Saxton & Williams, was not an absolute and un-

conditional transfer of the same, and did not have the effect of dissolving the co-partnership. (Receivers of Mechanic's Bank vs. Godwin, 1 Halst. Chy., 338.) Nor was said instrument intended to have that effect. It is evident from the language employed, that it contemplated a continuance of Saxton's interest in the firm, and a possible subsequent dissolution by the act of the parties themselves, before the extinguishment of the plaintiff's claim. It amounted ·to nothing more than a mortgage of the defendant Saxton's interest in the firm, and except in so far as it limited and restrained the disposition to be made of his portion of the profits arising from the business during the continuance of the partnership, and of the interest remaining to him after the dissolution, it did not in any way interfere with his power and authority as a partner.

In the case of Bently vs. Bates (4 Younge & Collyer, 190) Baron Abinger, speaking on this subject, said : "If you look to the constitution of a mercantile partnership, what is the meaning of a partner mortgaging his share ? Nothing more than that he covenants to pay the amount borrowed. It cannot mean that another person is, by means of such a transaction, to be forced into the partnership. The mortgage is nothing more than a personal covenant; it conveys no interest in the partnership effects. Put the case of the other partner having had notice of the transaction, and afterwards rendering an account to the creditor. He does not· thereby make himself a partner with the creditor, but only shows that he means to be accountable, and to render accounts ; and supposing the accounts are fallacious, if there is no remedy in equity, the party has none at all, for there is none at law, and no action against the supposed ·mortgagor would be available."

Saxton, then, having all the power of a partner, and having only pledged for the payment of his debt what should be coming to him as a partner, he had an undoubted right to be consulted as to the management of the business of the firm, with a view of making said business as productive and remu-

nerative as possible. The management and control of Saxton's interest stipulated for by the plaintiffs, related to the profits realized from the business, and his interest remaining after dissolution and settlement, and could not have been intended to curtail his authority as a partner. He could agree to a dissolution, and if so, then to any terms of dissolution which did not impair his interest, which was pledged as security to the plaintiffs.

It cannot be questioned that it was his right, as we think it was his duty, when the dissolution took place, to take steps to ascertain what his interest in the firm then amounted to. That was due not only to himself, but also to the plaintiffs. The inventory and appraisement were appropriate steps to that end. The debts were then to be paid and the notes and accounts collected before it could be ascertained what remained to be applied in satisfaction of the debt due to plaintiffs; for they were entitled only to what remained of Saxton's interest after settlement of the partnership. The duty of collecting the accounts and paying the liabilities, was devolved upon McLaran and Williams by the terms of the published notice of dissolution. But in the disposition of the stock, Saxton had an equal right with them to be heard, and had not in any way surrendered such rights. He was concerned in making his interest yield as much as possible.

It seems to us, therefore, that when the partners agreed upon the value of the goods remaining on hand, Saxton had a right to agree that the other partners should take them at such value, they standing, of course, as trustees of the proceeds under the agreement with the plaintiffs; and for any fraud or unfairness in such arrangement, they could be held responsible in the same manner in which they would be held for any fraud or unfairness in any ordinary sale for the payment of debts. If the amount then agreed upon, and for which McLaran and Williams thereby became liable to account, fairly represented the value of the stock on hand on January 1st, 1870, we do not see what right the plaintiffs have to complain. The partners were the proper parties to fix the

value and make the settlement as to the disposition of the stock.

When partners do not or cannot agree, a court of equity, on proper application, will order the property to be sold in order to ascertain its value. The referee found that it was fairly valued, and we think the evidence sustains his finding. No fraud or unfairness is imputed to the conduct of any of the parties to the transaction, and we see no reason why it should not be permitted to stand.

The exception taken to the transfer of $502.95 from the general expense account to the private account of Saxton, was, we think, properly overruled. It is true it was made after the 13th of April, 1869, but it was only the correction of an erroneous entry. That amount of the money of the firm was expended by Saxton on his own private account, while absent on business for the firm, and should originally have been charged to him. The account between the parties seems to have been correctly stated by the referee, and it was properly approved by the court.

We are not satisfied, however, with the action of the court below in adjudging one-third of the costs to be paid by the plaintiffs. There may be cases under the eighteenth section of our statute in relation to costs, where the trial court may exercise a discretion in the matter, but we do not conceive this to be one of them. Here, the defendants against whom judgment was recovered, in their answer deny the right of the plaintiff to recover anything whatever, and actually claim to be entitled to a judgment against Saxton for the sum of $6,000. On the issues made, testimony was taken before the referee, at intervals during a period of seven months, and the plaintiffs have recovered no inconsiderable judgment; and being in our opinion the prevailing party, within the meaning of the sixth section of the chapter on costs, they are entitled to full costs, and the judgment of the circuit court should be reformed accordingly.

The judgment will therefore be reversed and the cause remanded to the circuit court, with directions to enter up a

judgment in accordance with this opinion. All the other judges concur, except judge Vories who is absent.