MARY F. REED, guardian, vs. HARLAND G. BACON
& another.

Norfolk.    November 23, 1899. — March 2, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Promissory Note — Partnership — Action — Variance — Agency — Indorsement
— Insolvency — Evidence.*

An action may be maintained against the members of a partnership on a promis-
sory note signed by one member and indorsed by him in the firm name, given in
renewal of a note delivered to carry out a contract whereby the plaintiff made
an agreement with the maker of the note who undertook to act for the firm to
lend to the firm, and the firm agreed to borrow of him, a certain sum ; and the
fact that the maker of the note put the money into his own account instead of
into that of the firm will not affect the plaintiff's rights, if he was ignorant of it.

Proof of the original promissory note, made as a step in showing the character of
a renewal note, will not support a claim of variance under a declaration count-
ing on the renewal note.

If, in an action on a promissory note given for money lent by the payee to the
maker, the evidence shows that A. acted as the go-between in making the con-
tract, it is competent for him to testify to the agreement made through him, and
it is immaterial whether he was anybody's agent, and, if so, whose.

If a promissory note bears an indorsement when delivered to the payee, an indorse-
ment made by him when he puts the note in the bank for collection does not
make him the first indorser.

In an action on a promissory note signed by A., one member of a firm, and indorsed
by the firm, and which was given for a loan of money negotiated by B., if there
is evidence that statements were made by the firm to B. to be transmitted and
which were transmitted by him to the lender. which statements prove the plain-
tiff's case, the defendants are not entitled to a ruling that "no statements were
ever made by A. to the plaintiff touching the note in suit, according to the
plaintiff's case, and the partnership cannot therefore be bound."

The holder of a promissory note bearing the valid indorsement of a partnership
made by one partner may prove it against both the latter's estate and that of
the firm in insolvency.

Evidence of the person who negotiated a loan of money for which a promissory
note was given, as to the statements made to him by the borrower, and of the
lender as to the former's statements to him in relation to the matter, is admis-
sible in an action on the note.

CONTRACT, against Harland G. Bacon and Daniel O. Scofield,
"late copartners under the firm name of Lincoln, Bacon, &
Co.," upon a promissory note for $4,860.90, dated March 11,
1896, payable twelve days after date to the order of the plaintiff,
signed "H. G. Bacon," and indorsed " Lincoln, Bacon, & Co."

Writ dated October 10, 1898. Trial in the Superior Court, without a jury, before *Braley*, J., who allowed a bill of exceptions, in substance as follows.

It was agreed that the defendants were copartners under the firm name of Lincoln, Bacon, and Company. The genuineness of the signature to the note and of the indorsement was admitted. It was also agreed that the defendant Bacon, who testified that he made and indorsed the note, had since the execution of the note made a personal assignment for the benefit of creditors; and that a payment of eight per cent of the face value of the note had been made thereon.

Herbert E. Thompson, called as a witness by the plaintiff, testified that he looked to a certain extent after the investment of the plaintiff's money, or advised with her regarding the investment of her money; and that he had some talk with the defendant Bacon " about borrowing money for him for the firm."

He was then asked the following question, which was admitted, subject to the defendant's exception: " What conversation, if any, did you have with Bacon concerning a loan of $5,000 ? " To which the witness answered as follows: " The plaintiff had $5,000 paid her through me from the Clemens Company and put it in the bank.. A few days afterwards, or some time afterwards, Bacon asked me if there had been anything done with that money. I told him I did n't know certain, but would find out; that the plaintiff had not spoken to me about it. He said, ' If there has n't we would like to have it, we can use it.' I saw the plaintiff and she gave me this check and I gave it to Bacon, and he gave me the note and I gave it to her. I had further conversation with Bacon at that time concerning this money other than I have testified to. It was just before the first of the year some time. It was in 1892 or 1893, I should say. Bacon said at that time of the year money came in slowly, and after January the money usually came in and they would have the money."

The witness was then asked the following question: " What was the conversation you then had with the plaintiff about this money ?." To which he answered as follows: " I told her that Bacon said that they could use the money down there. Besides, it was said at that conversation by myself to

her, that they could use it and I thought it would be better for her to let them have it than to let them have it in the bank, as it was a national bank. The only further conversation at that time that I remember was, that Bacon had signed the note and the company would indorse it, and they would pay us six per cent."

On cross-examination, the witness testified, among other things, as follows: " The way it came that this note was made to the order of Mary F. Reed, guardian, was, the note has been renewed, as I understand, several times. . . . He did not tell me in so many words that the $5,000 was for Lincoln, Bacon, & Co., but I understood it was from statements he made to me."

The admission of this last statement was excepted to.

The plaintiff testified as follows: " The circumstances concerning the loaning of that money as I remember them are : It was a $5,000 note that the electric company borrowed of me, then Mr. Thompson came to me and told me that they wanted it down at the factory, and that Mr. Bacon thought they could use it, and that they would give me the company's indorsement, Lincoln, Bacon, & Co.'s indorsement, and I supposed that when I got that I was having the company's indorsement. Mr. Thompson came to me about that about a week after he gave me the check from the electrical company. I further remember concerning it, that Mr. Thompson said that they would give me the company's indorsement and a good six per cent interest, and it would be good security. I could n't tell just when this was, but to the best of my recollection I think it was in 1892 or 1893, somewhere there."

On cross-examination, she testified as follows: " I have made other loans to Mr. Bacon ; I have loaned some money to Lincoln, Bacon, & Co. I loaned money to him personally. I could n't tell whether it was the time this $5,000 was loaned. My notes were renewed so often and it is so long ago I could n't remember that. I don't recollect my transactions with Mr. Bacon, — Lincoln, Bacon, & Co., concerning any other than this note of $5,000 ; that is all. That which impresses the facts concerning this note so well upon my memory is on account of this being the electrical company note. It is n't possible that this electrical money went in some of the other loans. The

money that I got from the electrical company came to me by check, which I put in the bank. That money could n't have been some of the other money that I loaned Mr. Bacon. I did not see Mr. Bacon about this loan ; it was contracted between Mr. Thompson and him, and I never saw Mr. Bacon about it. I am certain of that. I never had any conversation with Mr. Bacon about any money excepting when I wanted it. And when I wanted it, was a month or two before the assignment was made, and then I called on Mr. Bacon, and told him that I wanted it and ought to have it, and he told me that he would pay it ; he paid me one note, his note of $4,000. He paid that to me in February before the failure. That was in February, 1896, three years ago. Then the $4,850 had the indorsement of Lincoln, Bacon, & Co. on it, and that was, — I can't tell just when that was to have been paid, but I know he came to me and wanted the note renewed for two weeks, and he did n't pay it then. Then he came and wanted it renewed for ten days and I had it renewed."

The defendant Bacon testified as follows : " When I delivered that note, the first note, I think it did not contain the firm's indorsement. No, sir, it did not. I got the money on this note. As to putting the money into the firm I don't remember the exact circumstances, I don't feel that I did put it in the concern. I think they had it all at different times, that is what I think. But it went through my bank account, I think, and I let them have some at intervals, as I was in the habit of doing with other sums. That was regardless of this note. I presume that the money which I got on this note went into my bank account."

On cross-examination, the witness testified as follows : " I had borrowed some money of her sometime before this. I borrowed some for the firm and some on my own account, and for others ; my name was on everything either as signer or indorser. I have borrowed money for the firm of Lincoln, Bacon, & Co. of her. Where it went directly to the company I made the note of the firm and indorsed it personally ; that is, where I put the money directly in the firm. I borrowed considerable money of people afterwards. I looked after the whole financial part of the business there, and all the rest of it,

manufacturing and everything. The business was the manufacturing of jewelry. I generally signed or indorsed the notes for the capital that was borrowed. So far as I know, all the money that was borrowed there for the use of the firm in any way was borrowed by me ; either in my own name, or on behalf of the firm in some way."

On re-direct examination, the witness testified that he thought that the proceeds of this note went into his individual bank account.

The defendant Scofield testified as follows : " Mr. Bacon borrowed money from time to time. He told me of his borrowings when he borrowed for the firm. The first I heard of the note in suit was about the time of the failure, about three years ago, — that was the first I ever knew of it. . . . Mr. Bacon had no authority from me to indorse the note in question."

Henry A. Hall, called as a witness by the defendants, testified that he was employed as a bookkeeper by them ; that the original note had been renewed at the end of six months ; and that the last renewal was dated March 14, 1896.

Thompson, recalled, testified that when he took the original note from Bacon and delivered it to the plaintiff, the indorsement of Lincoln, Bacon, and Company was on the back of the note ; and the plaintiff, recalled, testified that when she received from Thompson the original note the indorsement of Lincoln, Bacon, and Company was on the back of that note.

At the conclusion of the evidence, the defendants made the following motions :

" 1. To strike out the evidence of the plaintiff's witnesses on the ground that there is variance between the declaration and the proof. The declaration states that the note was made by Bacon and indorsed by the firm. The evidence was intended to show that the debt was contracted by the firm and not by Bacon individually. 2. To strike out the evidence of Thompson as to statements made to him by Bacon and by Thompson to the plaintiff, on the ground that there is no evidence that Bacon directed him to do so. 3. To strike out the evidence of Thompson, on the ground that there is no evidence to support a claim of agency outside of Thompson's own statements. 4. To strike out from the evidence of the plaintiff all statements made

to her by Thompson, because there was no ground laid for such evidence, except through the evidence of Thompson, which is inadmissible."

The judge declined to allow any of the above motions; and the defendants excepted.

The defendants further made the following requests for rulings:

" 1. The plaintiff has not proved the allegation set forth in her declaration. 2. The note sued upon is not proved by any evidence. All the evidence touches a $5,000 note made in 1891 or 1892, and the note in suit was given March 11, 1896, and is for $4,890.60. 3. The plaintiff's case rests upon an alleged agency by Lincoln, Bacon, and Company to Thompson. There is no evidence sufficient in law to establish this agency. 4. There being no sufficient evidence to contradict the evidence of the note itself, the plaintiff, the payee, is the first indorser, and Lincoln, Bacon, and Company the second indorser. A prior indorser cannot sue a subsequent indorser without evidence outside of the instrument. 5. No statements were ever made by Bacon to the plaintiff touching the note in suit, according to the plaintiff's case, and the partnership cannot therefore be bound. 6. The plaintiff has, subsequent to the making of the note in suit, treated it as the individual debt of Bacon by proving the note itself as a claim against the personal (assigned) estate of Bacon and receiving an eight per cent dividend thereon, and this she has done with the knowledge that the assigned estate of an individual partner cannot, nor can any part thereof, go to pay a debt of his firm till his individual debts are paid in full. 7. The plaintiff's case rests only upon the note itself and what it by its terms purports to be. 8. The defendant Bacon is the maker of the note, and presumptively it is his note, and the money loaned thereon was for his benefit. 9. This note shows upon its face that it was made by an individual and indorsed by him in the name of his firm. These facts were sufficient to put the plaintiff on inquiry as to whose benefit the note was issued. 10. A person loaning on commercial paper has no right to shut his eyes to warnings appearing on the face of the paper touching the liability of those to be holden thereon. 11. The indorsement is really a

guarantee and a contract of guarantee *strictissimi juris.* 12. The plaintiff well knew that Lincoln, Bacon, and Company were manufacturers of jewelry, and that it was not the business of the firm to act as accommodation indorsers. She cannot presume that the indorsement of the firm name on the note in question of itself bound the partnership. 13. The burden is upon the plaintiff to show affirmatively and satisfactorily in some manner that the indorsement in question was authorized by the firm, and this has not been proved. 14. Upon all the evidence the plaintiff has failed to sustain the burden of proof and make out a case, and judgment should be for the defendant."

The judge gave the rulings asked for numbered eight, nine, ten, eleven, and twelve, and the thirteenth, as to the burden of proof, but no more, and refused to give the other rulings requested; and the defendants excepted.

The judge found for the plaintiff; and the defendants alleged exceptions.

*C. A. Decker,* (of New York,) (*F. H. Williams* with him,) for the defendants.

*H. J. Fuller,* (*W. H. Pond* with him,) for the plaintiff.

LORING, J. The defendants' exceptions must be overruled.

1. There was evidence warranting a finding for the plaintiff; there was evidence that the note sued on was given in renewal of a note delivered to carry out a contract whereby the plaintiff agreed to lend to the firm of Lincoln, Bacon, and Company, and that firm agreed to borrow of the plaintiff, $5,000. A note signed by Bacon, one member of the firm, indorsed by the firm to carry out that contract, is given in the course of the firm's business, and binds all partners. *Wait v. Thayer,* 118 Mass. 473, 478. *Cooper v. McClurkan,* 22 Penn. St. 80, 84. *Langan v. Hewett,* 13 Sm. & M. 122. *Steuben County Bank v. Alberger,* 101 N. Y. 202. Dan. Neg. Instr. § 365.

The fact that the note was indorsed by the firm and was delivered in carrying out an agreement by which the firm agreed to borrow the money therein agreed to be paid, distinguishes this case from *Atlas National Bank v. Savery,* 127 Mass. 75; and *Smith v. Weston,* 159 N. Y. 194, in which it is held that a firm is not, at least *prima facie,* liable on such note when given for a loan made to one partner.

The bill of exceptions does not show to whom the cheque was payable by which the $5,000 borrowed by the firm was paid; if the cheque was made payable to Bacon personally, that would have been evidence tending to control the evidence that it was paid under a contract whereby the firm agreed to borrow the money. There was evidence that the defendant firm had been in the habit of borrowing money to carry on the firm business, and that that part of the firm business had been conducted by Bacon, the partner who made this agreement, signed this note as maker, and indorsed the firm name on the back. It appears that the $5,000 never reached the firm, but was intercepted on its way and put into Bacon's private account; but it is not shown that the plaintiff knew this; if she was ignorant of it, it could not affect her rights; her rights could not be affected by Bacon's act in wrongfully putting into his own bank account the firm's money which he had borrowed in its behalf. The fourteenth ruling requested was properly refused.

2. There is nothing in the first and second rulings requested. The plaintiff declared on the renewal note and proved it; and how proof of the original note made as a step in proving the character of the renewal note could be thought to lay the foundation of a claim of variance under a declaration counting on the renewal note is not apparent to us.

3. The third request was properly denied. There was evidence that Thompson acted as the go-between in making the contract; it is not material whether he was anybody's agent, and, if so, whose.

4. The fourth request was properly denied. There was evidence that the name of Lincoln, Bacon, and Company was on the note when it was delivered to the plaintiff, and an indorsement made by the plaintiff as payee when she put the note in the bank for collection did not make her the first indorser.

5. The fifth request was properly denied. There was evidence that statements were made by Lincoln, Bacon, and Company to Thompson, to be transmitted, and which were transmitted, by him to the plaintiff, which statements proved the plaintiff's case.

6. The sixth request was properly refused. The holder of a

note bearing the valid indorsement of a partnership, made by one partner, may prove it against both estates in insolvency.

7. The eighth, ninth, tenth, eleventh, twelfth, and thirteenth requests were given, so far as the burden of proof goes; so far as they asked for a ruling that the position of the names of the firm and of the individual partner on the note sued on was finally decisive against the plaintiff's right to recover from the firm they were wrong, for the reasons given in disposing of the fourteenth ruling requested.

8. That the testimony of Thompson and of the plaintiff were admissible is too plain to require discussion ; the other points covered by the motions made at the conclusion of the evidence have already been disposed of.          *Exceptions overruled.*