## Power Grocery Company, et al. v: Hinton, Assignee of George Alexander, and George Alexander.

## George Alexander and Company State Bank, and Speer, Banking Commissioner v. Power Grocery Company, et al. and Hinton, Assignee of George Alexander.

(Decided February 24, 1920.)

## Appeals from Bourbon Circuit Court.

1. Assignments—Equitable Assignment.—The delivery of a certificate, which was held by one as the evidence of his interest in a partnership, to a creditor, for the purpose of securing the payment of a debt, which he owed such creditor, and with the purpose and intention of a present appropriation of the interest in the partnership to the payment of such debt, is an equitable assignment of the interest in the partnership, for the purpose intended, although by parol.

2. Assignments—Equitable Assignment.—Any act, which makes a present appropriation of a fund, although not to be enjoyed until in the future, is an equitable assignment.

3. Assignments—Rights of Lien Creditors.—An assignee for creditors, stands in the shoes of the insolvent, and is not a purchaser for value, and hence, can not claim the property, except subject to the rights of the lien creditors.

4. Partnership—Execution of Accommodation Paper for Another—Implied Powers.—The execution of accommodation notes for another, or the acceptance or indorsement of accommodation paper for another, is not within the implied powers of a partner, and he is not authorized to execute the notes of the partnership for the accommodation of another, unless the partnership contract gives him such authority, or he is specially authorized by the partners.

5. Partnership—Execution of Accommodation Paper by Managing Member—Liability.—Where the managing member of a commercial partnership has customarily executed the notes of the partnership in the transaction of its business, and executes an accommodation negotiable note in the name of the partnership for another, and the accommodation character of the instrument does not appear upon its face, it is a valid liability of the partnership in the hands of a bona fide holder, without notice of the infirmity arising from its unauthorized execution.

6. Partnership—Liability for Accommodation Paper.—Where a trading partnership becomes liable for an accommodation note, executed by one partner, for the partnership, without authority so to do, by its passing into the hands of a bona fide holder, with-

out notice of the accommodation character of the signature, and the partnership is required to pay it, the partners, who did not consent to the execution of the paper, and were without knowledge of it, have a superior lien upon the interests of the partner, who executed the note, and upon the interests of the one, who received the proceeds, upon a settlement of the partnership, to recoup them for their loss, in the partnership having to pay it.

7. Partnerhsip—Partnership Debts—Liens—Equity.—A partner has an equitable right to require the partnership property to be applied to the payment of the partnership debts, and has a lien upon the shares of the other partners, for any balance, that may be due him, or claim arising out of the partnership business, but, has no lien for a balance or claim, which arises out of a transaction outside the scope of the partnership purposes and business.

8. Equity—Liability for Negligence.—Between even two innocent persons, equity will place a loss upon the one whose acts or negligence caused the loss.

9. Partnership—Bankruptcy—Assignment.—The bankruptcy or assignment by a partner for the benefit of creditors, will work a dissolution of the partnership.

10. Partnership—Death of Partner—Dissolution.—Death of a partner will work a dissolution of a partnership, unless the deceased partner has provided by will, or unless the partnership contract provides for the continuance of the partnership.

11. Partnership—Assignment by Partner as Security for Debt.—An assignment by a partner of his interests in the partnership, as the security for the payment of a debt does not work a dissolution of a partnership where it is contemplated, that he is to continue in interest and authority in the partnership.

12. Partnership—Assignment for Creditors—Dissolution.—Where the partnership contract provides for a continuance of the partnership, and one of the partners makes a general assignment for creditors, it works a dissolution of the partnership, in spite of the contract, to the extent of a disposition of the interest of the assigned partner, and a settlement of the partnership affairs, to that time, and of claims connected with the assigned interest.

CLINE & HUTCHCRAFT, E. L. WORTHINGTON, DENNIS DUNDON, GEO. C. WEBB, J. J. WILLIAMS and WORTHINGTON, COCHRAN & BROWNING for Geo. Alexander & Company State Bank and Banking Commissioner.

E. C. O'REAR and HARMON STITT for Power Grocery Company,

TALBOT, WHITLEY & HINTON and BRADLEY & BRADLEY for Geo. Alexander's Assignee.

OPINION OF THE COURT BY JUDGE HURT—Reversing upon both appeals.

The above stated appeals were taken upon the same record and are heard and decided together.

The Power Grocery Company, on the 19th day of May, 1914, was a trading partnership, and had been such for several years theretofore. The members of the partnership, were H. A. Power, J. H. Fuhrman, J. W. Bacon, Charles Stevens and George Alexander, the latter of whom owned an interest equal to seven-twentieths of the property and business of the partnership. Several years, therefore, there had been a corporation, which bore the same name as the present partnership and was engaged in the same business, as the partnership has engaged in since its creation. Previous to the 26th day of September, 1899, the parties, who were the owners of the capital stock of the corporation, by mutual consent, dissolved it, and created the partnership, and, by the partnership contract, each of them, became the owner of such an interest in the partnership, as he had theretofore held in the corporation. The members of the partnership, not being equal, in interest, also, agreed, that each of the partners should continue to hold the stock certificate, which had represented his interest in the dissolved corporation, before its dissolution, as the evidence of his interest in the partnership, and, thereafter, when any change occurred in the membership of the partnership by which the interest of a persisting member was enlarged, a certificate, similar to the certificates of stock, which were used when the corporation existed to evidence the amount of his stock, was issued to the member as evidence of his additional interest in the partnership, or, a new certificate was granted, covering the entire interest. At the time, the partnership was formed, or, anyhow, on the 26th day of September, 1899, the members of the partnership entered into a contract, which was reduced to writing and signed by each of them, touching their respective interests and for the purpose of providing for its continuance or dissolution in the event of the death of a member, or the desire of a member to part with his interest. The contract was to the effect, that the partnership property was divisible into two hundred and fifteen parts, of which George Alexander was the owner of sixty, and H. A. Power, Charles Stephens, Fletcher Mann, Mann & Fuhrman, William Hinton, J. W. Bacon, and Bacon Bros., were the

owners of fifty, thirty, thirty, fifteen, eight and seven parts respectively. For the purpose, as expressed, of preventing the expenses and loss of a dissolution and settlement in the event of the death of any member of the partnership, or, in the event of the desire of any member to dispose of his interest, the parties agreed, with each other, that the partnership should continue as long as the partners, who owned the greater interest therein, should desire to continue it, or such greater interests amounting to a majority in interest, could dissolve the partnership when they desired, and, in the event of a dissolution, the business and property of the partnership should be settled in the usual way, each receiving his share of the net proceeds of the property. If any member of the partnership, or the personal representative, of a deceased partner, desired to withdraw from the partnership and to dispose of his interest, therein, the remaining partners were to have an option to purchase the interest, which was desired to be disposed of, at a price, to be fixed as follows: Ten per centum should be deducted from the total assets, as shown by the last preceding inventory, and from the remainder, the total liabilities of the partnership, at the date of such preceding inventory, should be deducted, and, of the amount remaining, the interest to be disposed of, was to be fixed in accordance to the proportion of same, owned by such member. If the persisting members of the partnership were not willing to purchase the interest at the price thus fixed, the one, desiring to dispose of his interest, or his personal representative, if he was dead, might then sell the interest, but, to a purchaser, who was to become a member, instead of the retiring partner, and subject to the terms of the partnership contract, then existing between the other members. It was, also, agreed, that the expenses and losses, to the partnership, incident to a sale of the property upon a dissolution and settlement, would be, at least, ten per centum of the assets appearing from an inventory, and for that reason, it was agreed, that, in ascertaining the value of a retiring interest in the property for the purpose of the persisting members exercising their option to purchase it, the total assets, at the preceding inventory, should suffer a reduction of ten per centum.

An inventory of the assets of the partnership was regularly made as of the first day of July in each year. Under the contract, the partnership continued from 1899 to November 30, 1917, the date of the rendition of the judgment appealed from, and, probably, yet continues. During the continuance of the partnership, Bacon Bros., disposed of their interest to J. W. Bacon, and Fletcher Mann, and Mann and Fuhrman disposed of their interest to J. H. Fuhrman, presumably, in accordance with the terms of the above stated contract.

The George Alexander & Company State Bank, was a corporation, engaged in the business of banking, and authorized to conduct such business as other similar institutions are, under the laws of Kentucky. George Alexander was president of its board of directors, and seems to have been permitted to have control of the conduct of its operations. The bank became largely involved, and, on May 19, 1914, its affairs and property were placed in the hands of the Banking Commissioner. On the same day, Alexander made a general assignment, for the benefit of his creditors. On May 15, 1911, Alexander had procured, from the bank, the sum of $25,800.00, and, on May 29, 1911, the further sum of $16,700.00, and, as the bank and Banking Commissioner now claim, he assigned, to the bank, absolutely, his interest in the Power Grocery Company in payment of what he owed to the bank, and the bank now claims the interest of Alexander in the partnership property as against his assignee, or any creditor.

On April 3, 1914, Alexander procured H. A. Power, the managing member of the Power Grocery Company, to execute the negotiable note of the partnership to the Peoples Bank, of Paris, for $10,000.00, for the accommodation of Alexander, and the proceeds of the note, Alexander received and appropriated to his individual affairs other than his connection with the grocery company. On May 6, 1914, Alexander procured Power to execute two negotiable notes for $5,000.00 each, as the notes of the grocery company, and payable to it, and to indorse them to Alexander. Of these notes, Alexander received the proceeds, and appropriated same to his individual purposes. The above three mentioned notes, became due in six months after date, respectively, and were paid by the grocery company. The members of the

partnership, other than Alexander, claim, that the amounts of the three notes $20,300.00, represent an advancement, by the firm, to Alexander, and that his share in the partnership, should be charged with same in a settlement of it, and that they have a prior lien upon the interest of Alexander to reimburse the losses, sustained by them through the partnership paying the notes.

The assignee of Alexander denied the claim of the bank to the ownership of, or a lien upon, the interest of Alexander in the partnership as well as the claim of the partners of the grocery company to a lien upon Alexander's interest in the partnership, and set up a claim to the interest, as an asset for the benefit of Alexander's general creditors.

The court, by its decision, denied the claim of the bank and the partnership, and adjudged, that the assignee, for general creditors, was entitled to the interest of Alexander in the partnership, but, in accordance with the partnership contract, held, that the other partners had an option to purchase the interest of Alexander, but, in fixing the value of the interest, the court refused to deduct ten per centum of the total assets as of the inventory last preceding, and from the judgment, the Bank and Banking Commissioner and Power Grocery Company have appealed.

(a) It is insisted, that the bank is not the owner of the interest of Alexander in the partnership, because, (1) the partnership contract forbids such a sale to be made by Alexander; (2) the bank had no authority, under its charter, to purchase, or be a partner in a grocery business, or to engage in such business; (3) the state could bject to such a transaction, and did so, resulting in the bank releasing its claim to ownership; (4) Alexander never sold nor assigned his interest in the partnership to the bank, and never intended to do so. The facts, as they appear from the evidence, are, that Alexander became indebted to the bank in the sums, and at the times, heretofore stated. For the purpose of securing the payment of this indebtedness, he delivered to the bank, the certificate or certificates, which he held as evidences and representative of his unliquidated interest as a partner in the Power Grocery Company. The bank received the custody of the certificates, and held them for the purpose stated. The proper entries were made upon the books of

the bank, showing the holding of the certificates as its property, and a part of its assets. What part the directors and other officers of the bank took in the transaction, does not appear, except one director deposes, that he did not know of the transaction until after the bank was placed in the hands of the Commissioner, though he fails to show, that he ever made any examination of the records of the bank, touching the transaction. It can not be assumed, under the circumstances appearing, that the transactions were without the knowledge, or concurrence of the directing authorities, of the bank. Afterward, an official bank examiner objected to the bank holding the certificates as assets, upon the ground, that Alexander was a member of the partnership in which the certificates were held. There is no contradiction of the testimony upon this subject, and as it could have been easily done, if not true, it can not be assumed to be false. The fact of the objection, however, is conclusive evidence, that the examiner had information from the records, or otherwise, that the bank was claiming an interest in the certificates or in the interest in the partnership, which they represented. To meet the objections of the examiner, Alexander procured three of his friends to execute their promissory notes to the bank for the amount of his indebtedness, and the certificates were then placed with the notes as collateral to secure their payment. It is suggested, that these notes were without consideration, and, therefore, unenforcible, and, for that reason, the lien if any, upon the certificates, is not enforcible; but if the notes were unenforcible, Alexander's debt to the bank was not paid, nor would the effect of that transaction be such as to deprive the bank of the right to collect the debt of Alexander, and to enforce its rights to the certificates. If the notes were enforcible, then the lien of the bank upon the certificate to secure the debt is valid as will be, hereafter, shown. It does not appear, that the debt of Alexander was credited by these notes, nor any arrangement made, which would have the effect of discharging Alexander's liability to the bank, and the notes really appear to have been intended as additional securities for Alexander's debt. The suggestion, that the certificates, represented, only, the holdings of stock, in a defunct corporation, and, therefore, worthless, is not impressive, when all the partners testify, that it was agreed

between them, that the certificates should be held by the parties to represent their respective interests in the partnership, and as evidence of the same, and others of the partners had used their certificates as securities for loans. It does not appear whether the certificates, pledged by Alexander, were ones, which formerly represented stock in the defunct corporation, or whether they were certificates, which had been issued to him by the partnership, since his interest, therein, upon its creation was 60/215 and had changed at the time the certificates were pledged to the bank to 7/20. The evidence does not prove an absolute sale by Alexander, of his interest in the partnership, for while he testified, that he sold his interest to the bank, he qualified the statement with the further condition, that he had a right to redeem the certificates by the payment of his debt, and hence. the transaction was only a pledge of his interest in the partnership, as a security for the payment of the debt. This conclusion disposes of the first three objections to the validity of the bank's claim, without further consideration of them, as it is not unlawful for a bank to accept a lien upon an interest in a partnership to secure a debt owing to it, nor was such act contrary to the stipulations of the partnership contract. The essential question, however, remains, and that is, as a matter of law and fact, did Alexander assign to the bank, his interest in the partnership to secure the payment of his obligation? If he had executed a written assignment of his interest and delivered it to the bank along with the certificates, it is not apparent upon what ground, it could be contended, that he had not made the assignment, but, he did not execute any writing, and the question for determination is, did the facts of the transaction constitute a parol equitable assignment? The consideration was more than ample. The certificate or certificates represented the property and interest, which he had in the partnership, and they were delivered, by him, into the control and custody of the bank. His interest in the partnership was incapable of manual delivery, and hence, the delivery of the symbol constituted a symbolical delivery of his interest, and if the only evidence upon the subject is to be believed, that was done with the intention to make a present appropriation of all the interest, which he had in the partnership to the bank to secure the pay-

ment of his indebtedness to it, and his control over the certificates was relinquished, as they remained, thereafter, in the custody and control of the bank. Such a paper is not negotiable by delivery, only, but, there are no requirements, that the transfer of such an instrument shall be in writing. Hence, an assignment of the interests of Alexander in the partnership, effected by the delivery of the certificates, and his relinquishment of control over same with the intention upon his part to vest the bank with a present interest in the property, represented by the certificates, although not to be enjoyed until a future time, may be made by parol and amounts to an equitable assignment of the interest for the purpose for which it was assigned, when it was accompanied by any act or declaration, which made it an appropriation of the interest. This conclusion, we think, is supported by the following authorities; 5 C. J. 902, 906, 909, 910, 911; Pomeroy, vol. 3, 291; Bispham, sec. 167, Newby v. Hill, 2 Met. 530; Bank v. Huth, 4 B. M. 423; Beard v. Sharp, 23 K. L. R. 1582; Little v. Berry, 113 S. W. 902; Genther v. Gray, 17 K. L. R. 763; Gray v. Briscoe, 6 Bush 690; Sutler v. Grosse, 26 K. L. R. 585; Corn v. Sims, 3 Met. 399; Brown v. Lapp, 28 K. L. R. 410; Thompson v. Stiltz, 29 K. L. R. 1075; Lexington Brewing Co. v. Hamon, 155 Ky. 711; Philadelphia Veneer, etc. v. Garrison, 160 Ky. 329; Frankfort Bank v. Hunter, 3 A. K. M. 292. A general rule of equity is, that it looks not to the manner nor to the form, but to the substance of a transaction, and the end to be attained. First State Bank v. Morton, 146 Ky. 267; Thompson v. Thompson, 2 B. M. 174. The conclusion reached as above stated, is fortified by the fact, that, if Alexander, never having made a general assignment for the benefit of his creditors, should claim the certificate or certificates pledged with the bank, it is apparent, that he would be denied such claim without first having satisfied his indebtedness to the bank. The assignee for the benefit of the creditors having and receiving only such rights as Alexander had, and not being a purchaser for value, his claim is necessarily inferior to that of a lien creditor, whose lien can not be prejudiced by the general assignment for the benefit of creditors. Bridgeford Trustee v. Barbour, etc., 80 Ky. 529; National Bank, etc. v. Louisville Banking Company, 98 Ky. 371; Story, sec. 1078. Hence, it is concluded, that the

bank has a lien upon the interest of Alexander in the partnership, superior to all other claims, except Bacon, Stephens and Fuhrman, who, as members of the partnership, suffered a loss in accordance with their interest in it, by the partnership discharging the accommodation notes executed by Power for Alexander.

(b)   The evidence discloses the fact, that H. A. Power was the managing member of the Power Grocery Company, which was a commercial or trading partnership, and he had customarily signed the name of the partnership to checks and promissory notes, negotiable and otherwise, in the transaction of the firm's business, and for its purposes.   The three notes, amounting to $20,300.00, to which he had subscribed the name of the partnership and delivered to Alexander, and of which the latter received all the benefits, were negotiable notes, and were executed and delivered to Alexander solely for his accommodation. The execution had no connection with any business of the partnership, and were not used by Alexander for any partnership business, or purpose, but in his individual affairs.  The accommodation character of the notes, did not appear upon their faces, and before they became due, they became the property of holders in due course, and for value and without notice of their accommodation character. The members of the partnership, other than Alexander and Power, had no knowledge of the notes, until long after they were negotiated, and had never specially nor otherwise, authorized Power to execute, for the partnership, accommodation papers for any one, and did not ratify the act of Power, after they received knowledge of the execution and existence of the notes.   When the notes became due, Power paid them out of the partnership funds, without the knowledge or consent of his co-partners.  As a general principle, partners are agents for each other, and each is bound by the act of the other, when the act is within the scope of the partnership purposes and business, but the execution of notes for the accommodation of another, or the acceptance and indorsement of the accommodation paper of another, is not within the implied powers of a partner, and a partner is not authorized, in the absence of a contract, or of special authority, to execute such paper for the partnership; Chenowith v. Chamberlin, 6 B. M. 60; Steubin Co. Bank v. Alberger,

101 N. Y. 212; Baldwin's Bank v. Morris, 17 N. Y. Suppl. 286; Dundas v. Gallegher, 4 Pa. St. 205; Flemming v. Prescott, 3 Rich. (S. C.) 307. However, if the partnership is one engaged in trade, and the paper, executed for accommodation, is negotiable and executed by the managing member, and the accommodation character of the signature does not appear upon the face of the paper, the partnership will be bound upon it when it is negotiated and in the hands of a *bona fide* holder without notice of its infirmity by reason of its unauthorized execution. Reed v. Bacon, 175 Mass. 407; Catskill Bank v. Stall, 15 Wend. (N. Y.) 364; Hawes v. Denton, 1 Bailey (S. C.) 146; 30 Cyc. 517. Hence, before Alexander made his assignment for the benefit of his creditors, generally, the notes had become a partnership liability, by operation of law, and, though without the consent of the innocent co-partners, the partnership had become bound for their payment, and the fact, that Power, when they became due, paid them out of the partnership assets, though without the knowledge or consent of his co-partners, was not a waiver of any right by the partners, as one does not have to wait to be sued upon an obligation for which he is legally bound. It thus became a partnership affair so far as concerns the rights of Bacon, Fuhrman and Stephenson, and, being a partnership liability, they had the right to demand that it be paid out of the partnership assets, and the holders of the notes, through the equity of the partners, could demand the same. The general principle is, that a member of a partnership, has an equity, which he is entitled to enforce, and which a firm creditor may enforce by a kind of subrogation to the equity of the partner and which entitles him to require the partnership liabilities to be paid out of the firm assets, unless the partner waives the right, before the interest of a partner in the firm, can be applied to the payment of his individual creditors. Anderson v. Morris, 10 K. L. R. 544; Level v. Farris, 24 Mo. App. 445; Goldsmith v. Eichold, 94 Ala. 116; Williams v. Gage, 49 Miss. 777; Sigler v. Knox County Bank, 8 Ohio St. 511; Allen v. Grissom, 90 N. C. 90; Rainey v. Nance, 54 Ill. 29; Claflin v. Behr, 89 Ala. 503; Chase v. Steel, 9 Cal. 64. The principle is, also, as well established, that upon a settlement of the accounts of a partnership, a creditor partner has a lien upon the share of his debtor co-partner for

any claim or balance to which he is entitled, which is incident to, and grew out of the partnership business, but, this lien does not exist for a claim, which grew out of a transaction, outside the partnership scope and business. 30 Cyc. 701; Hodges v. Holeman, 1 Dana 50; Connell v. Sandidge, 8 Dana 273; Cooper v. Webster, 4 R. 734; Pearson v. Keedy, 6 B. M. 128; Black v. Bush, 7 B. M. 210; Talbot v. Pierce, 14 B. M. 195; Anderson v. Morris, *supra;* Simerall v. O'Bannon, 7 B. M. 608. In the instant case, the notes having already been paid out of the partnership assets, the only question for consideration is the right of the partners, who did not consent thereto, to a lien upon the interest of Alexander to secure their reimbursement. Bacon, Fuhrman and Stephenson have a lien upon the shares in the partnership of both Alexander and Power to pay them for the loss, suffered, by each of them, on account of the payment of the notes by the partnership, as Alexander and Power were, jointly, the cause of the loss. The liens of Bacon, Fuhrman and Stephenson upon the shares of Alexander and Power are of equal dignity, as to each share, and superior to the lien of the bank upon Alexander's share, since the bank, when the lien in its favor was created, had knowledge that the interest upon which its lien was created, was the interest of Alexander, in the partnership, after a settlement of the partnership accounts, and such a lien in favor of a third party, is inferior, to the equity of the partner, which entitles him to require the partnership debts to be paid out of the partnership funds, and the lien, which he has upon the share of a co-partner, for any balance which may be due him upon settlement. Black v. Bush, 7 B. M. 210; Devine v. Mitchum, 4 B. M. 488; Bank of Ky. v. Herndon, 1 Bush 359; Hodge v. Holeman, 1 Dana 50; Wintersmith v. Pointer, 2 Met. 457; Robinson v. Winn, 4 R. 54; West v. Armstrong, 4 R. 998. When a party assigns or creates a lien upon his interest, the creditor takes the assignment or lien, subject to an accounting between the partners of all claims and demands, within the business and scope of the partnership. It will be inequitable to hold, that Bacon, Fuhrman and Stephenson, who were in nowise, at fault, and when by law the liability became a partnership transaction as to them, should be denied the common equities to which a partner is entitled, because the transaction, which made it a

partnership liability, as between Alexander and Power, was outside the scope of the partnership, and an individual transaction as between them, and which as between them alone, would not involve the partnership accounts. True, Power did not receive any of the proceeds of the notes, but, by his unauthorized act, he enabled Alexander, without the consent of the partnership, to secure the funds for his individual use, and while the estate of Alexander will be indebted to Power for any sum, he has or may be required to pay for him, Power has no lien upon the share of Alexander for his loss, because of the partnership paying the notes, and no lien upon it because of any sums, which he may be required to pay to co-partners, because of the transaction, except subject to the lien of the bank, as he had knowledge and consented to the transaction and as between him and Alexander it was not a transaction within the scope of the partnership. The partners, Bacon, Fuhrman and Stephenson having a lien upon the shares of Alexander and Power, while the bank has a lien upon the share of Alexander, alone, the parties, named, should be required to exhaust their remedies against Power before subjecting the interest of Alexander upon a well known rule in equity, that, even, as between two innocent persons, the one must suffer, who, by his acts or laches, has made a loss possible. Straeffer v. Rodman, 146 Ky. 1; Hall v. Pratt, 142 Ky. 561.

(c)    Much argument is indulged in, in briefs of counsel relative to whether the partnership has been dissolved by Alexander, in assigning his estate for the benefit of creditors. It may be said, that as a general rule, the death, bankruptcy or general assignment of a partner, will work a dissolution of a partnership. Fitch v. Pryse, 4 R. 904; Eustes v. Belles, 146 Mass. 413; Marquant v. N. Y. Mfg. Co., 17 Johns 525; Blackwell v. Claywell, 75 N. C. 213; McNutt v. King, 59 Ala. 597; Thompson v. Noble, 108 Mich. 19; Conrad v. Buck, 21 W. Va. 396; Saloy v. Albrecht, 17 La. Ann. 75; Arnold v. Brown, 24 Pick. 899. An assignment of an interest in a partnership for the security of a debt, does not work a dissolution of a partnership where the transaction contemplates a continuance of the partner's interest and authority in the partnership. Dupon v. McLaren, 61 Mo. 502; Monroe v. Hamilton, 60 Ala. 226; Mechanics Bank v. Goodwin, 5 N.

Y. Eq. 334; Brown v. Beacher, 120 Pa. St. 590; State v. Quick, 10 Ia. 457; Inglis v. Floyd, 33 Mo. App. 565; 20 R. C. L. 955. Under these authorities, it is apparent, that the assignment by Alexander to the bank, did not work a dissolution of the partnership. Although we are not, here, concerned with the effect upon the partnership of the death of a partner, an analogy may be drawn from the principles, which apply in such an event. Notwithstanding, the general rule, that the death of a partner works a dissolution of the partnership, there are many authorities, which hold, that it is otherwise, when the deceased partner by will, or the articles of partnership provide, for a continuance of the partnership after the death. Insley v. Shive, 45 St. Rep. 308; Blaker v. Morse, 60 Kan. 24; Exchange Bank v. Tracey, 77 Mo. 594; Parnell v. Thompson, 33 L. R. A. (N. S.) 668; Vincent v. Martin, 79 Ala. 540; Schofield v. Eichelberger, 7 Pet. 594; Rand v. Wright, 141 Ind. 226; Power v. Hopson, 13 La. Ann. 626; Edwards v. Thomas, 66 Mo. 468; 30 Cyc. 626, 653; Wilcox v. Derickson, 168 Pa. St. 331. While it is readily discernible, how it would be feasible, in the event of the death of a partner, for a personal representative or a devisee, or one to whom the interest might be sold, to take the interest and place of the deceased partner, under the same obligations, and the partnership be continued, but, where a partner becomes a bankrupt, or assigns, generally, for the benefit of creditors, and the rights of creditors intervene, and the interest of the assigning partner must be ascertained and sold and the proceeds distributed among the creditors, it is not apparent how a contract for the continuance of the partnership, in such an event, could be made effective, except to the extent, that the articles of partnership might control the manner of the sale, the fixing of a price, and extending a right to the persisting partners, to become the purchasers. Where such a partnership exists, it is evident, that an assignment of a partner works a dissolution of the partnership, in spite of the contract, at least, to the extent of making necessary a settlement of the partnership affairs, to that date, and an adjustment of the claims and obligations between the assigned partner and his co-partners, and such claims of the co-partners as grow out of the settlement touching the share of the assigned partner. Ellis v. Johnson, 14 R. 991. It is more in the nature of a contract

to form a new partnership entered into by the former partners. In the instant case, the partnership contract provides for its continuance in the event of the death of a partner, or the desire of one to dispose of his interest, and the manner of ascertaining the value of the interest, and the right of the persisting partners to purchase at the price fixed, and if the partners decline to purchase, a sale to some one, who will become a member of the partnership under the terms of the contract. The case of the share of a partner, who makes a general assignment is not specifically provided for, but, the terms of the contract are sufficiently broad to include such an event, and from its terms, we are of the opinion, that it was so intended. Hence, in fixing the price of Alexander's interest, it should be done, in accordance with the terms of the contract, and if the other partners decline to exercise the option to purchase, and within a reasonable time, a purchaser is not secured, at the price fixed, who will become a member of the partnership, a settlement of the partnership will necessarily have to be effected, in the ordinary way.

The judgment is therefore reversed upon both appeals, and the cause remanded for proper proceedings not inconsistent with this opinion.