Howell, Gano & Co. vs. Commercial Bank of Kentucky.

CASE 16—PETITION EQUITY—APRIL 23.

# Howell, Gano & Co. vs. Commercial Bank of Kentucky.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

1. LEVY OF ATTACHMENT ON GOODS WITHOUT CLOSING THE STORE OR RE-MOVING THE GOODS.—The sheriff entered the store and levied the attachment on the goods, and, thereupon, without closing the store or removing them, by an arrangement between the plaintiffs' attorney and the party in possession at the time the levy was made, the sheriff was authorized to and did leave the goods in possession of the latter. *This arrangement did not discharge the levy or affect its validity, and such party thereafter held possession as the sheriff's bailee.* Sales of the stock of goods levied on, and additions thereto, being made by the party in possession, after the levy of the attachment, all the goods levied on, remaining in the store, are ordered by the court to be repossessed and sold by the sheriff; but no lien existed by virtue of the attachment on the goods acquired after the levy.

2. When one partner surrenders partnership property to be levied on, to satisfy an attachment against his co-partner, the partner making the surrender, is estopped from asserting title in himself, or controverting the plaintiff's right to enforce the levy.

3. Although, strictly speaking a creditor has no lien on the partnership effects, yet each partner having a lien for all the debts and obligations of the firm, that lien, may, in many cases, be made available through the medium of the partners for the benefit of the creditors. (*Story on Partnership, sec.* 360; 3 *Kent's Com.,* 65; *Wilson, &c., vs. Soper, &c.,* 13 *B. Mon.,* 411.)

4. Whenever, through the agency of either partner, the insolvency or the dissolution of the firm, a partnership creditor is brought in contact with a separate creditor of an individual member of the firm, equity gives the creditor of the firm preference; for the joint creditor must be paid in order to a due administration of justice between the partners themselves. (*Parsons on Partnership,* 345.)

5. If a private creditor of a partner attaches his interest in the firm, his attachment is avoided by the insufficiency of the joint assets to pay the joint debts. (*Parsons on Partnership*, 353.)

6. Liens acquired by the levy of executions and attachments, against one partner, on partnership property, are subject to the existing debts of the firm, and should only be enforced in subordination to the joint debts of the firm which were created before the date of the levy.

E. I. BULLOCK and
BRAMLETTE & SON,                                    For Appellants,
                         CITED—

5 *B. Mon.*, 547; *Wood vs. Wier & Sayer*.
*Civil Code, secs.* 238, 232.
8 *B. Mon.*, 413; *Chambers vs. Eldridge*.
2 *Bush*, 240; *Deposit Bank of Cynthiana vs. Berry, administrator.*
*Story on Partnership, secs.* 97, 326, 360.
7 *B. Mon.*, 610; *Black vs. Bush*.
8 *B. Mon.*, 485; *White vs. Woodward*.
14 *B. Mon.*, 198; *Talbot vs. Pierce*.
18 *B. Mon.*, 664; *Watson vs. Gabby*.
2 *Met.*, 457; *Wintersmith & Co. vs. Pointer, &c.*

L. D. HUSBANDS,                                    For Appellee,
                         CITED—

8 *Johnson's R.*, 20; *Dota vs. Turner*.
1 *Greenleaf on Ev., sec.* 207, *and note* 2.
*Story on Partnership, sec.* 357.
13 *B. Mon.*, 411–14; *Wilson vs. Soper*.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

On the 16th day of September, 1863, Geo. O. Hart drew a bill of exchange for five thousand dollars on "Capt. W. Conner, steamer Liberty No. 2, and owners," payable to the order of J. B. Archer, which was accepted by Conner and indorsed by Archer, and also by the firm

of Hart & Co., composed of E. R. Hart, said J. B. Archer, L. M. Flournoy, and G. W. Wyatt; and on the 25th day of November, 1863, said Geo. O. Hart drew another bill on said Conner for five thousand dollars, payable to the order of Hart & Co., which was accepted by Conner, and indorsed by Hart & Co. and Geo. Myers. Said two bills having been sold to the Commercial Bank at Paducah, were, at their maturity, protested for non-payment.

On the 8th day of December, 1865, suits were brought by the bank on said bills in the McCracken circuit court. The action on the first named bill being against Geo. O. Hart, J. W. Conner, J. B. Archer, E. R. Hart, and John P. Hart; and that upon the last being against Geo. O. Hart, J. W. Conner, E. R. Hart, John Hart, and George Myers; and orders of attachment were sued out against the property of said Conner, E. R. Hart, and Geo. O. Hart, who were non-residents of Kentucky.

On each of said orders of attachment the sheriff made substantially the following return: "December 9th, 1865. I have levied this attachment on the entire stock of goods in the hardware house of E. R. Hart & Co., on Market street, and on the stock of goods in the shops of said house on Court street, and on the lot and dwelling-house formerly occupied by E. R. Hart, being the half of the upper half of lot No. 62, block No. 13, upper addition to Paducah, on Oak street, by delivering a copy to John Hart, who has possession of said property.

"J. C. CALHOUN, *S. McC. C.*"

In November, 1866, John P. Hart, who had continued in possession of the hardware store and shops, filed an answer in each of the suits, which were, in the meantime, consolidated, denying that he was a member of the firm of Hart & Co., or that either of said bills of exchange was his act and deed; and at the same time

an order was made sustaining the attachments as to the defendant, E. R. Hart, and directing the sheriff to repossess himself of the attached property so far as it remained in kind, and to proceed to sell the same. In the meantime, there having been personal service of process in the actions upon E. R. Hart and some of the other defendants, judgments were rendered against them, and an execution on one of these judgments was levied on the goods in the hardware store in the possession of John P. Hart. Under said execution levy, as well as the order to the sheriff to repossess himself of the attached property, it appears that he took possession of the property in January, 1867.

By the reports of the sheriff and his deputy, and other evidence, it also appears that J. P. Hart not only sanctioned the levy of the attachments on the hardware store and goods in the shops, but by his interposition with J. L. Dallam, the cashier of the bank, and his agreement with him that the levy might continue in force on all the property levied upon, induced Dallam to instruct the sheriff to leave the property in his possession, and also to refrain from making a further levy of the attachments on certain steamboats belonging to E. R. Hart. It further appears, that when the sheriff proceeded to repossess himself of the property, the goods in the store had been partly sold off by J. P. Hart, and the residue so mixed and confused with others which he had purchased, that it was not possible, with reasonable certainty, to identify the goods which were embraced by the levy of the attachments.

It also appears that John P. Hart was not a member of the firm of Hart & Co., but a partner of E. R. Hart in the hardware establishment, which was conducted in the firm name of E. R. Hart & Brother; and that, after the

attachments were levied, said E. R. and J. P. Hart entered into a written contract, by which the former undertook to sell and transfer to the latter his interest in the partnership property, J. P. Hart undertaking on his part to pay the debts of the firm. This transaction was assailed by the bank as fraudulent, by an amended pleading, which was controverted by J. P. Hart. And Howell, Gano & Co. and various other creditors of the firm of E. R. Hart & Brother, having recovered judgments for their debts, they, together with J. P. Hart, filed their petition, and were thereupon made parties, and through said Hart asserted a lien on the property in controversy for the payment of the firm debts; and E. R. Hart filed an answer, in which he united in the prayer of the creditors, that the partnership effects of the firm of E. R. Hart & Brother be first appropriated to the payment of its debts.

After the appointment and report of a commissioner instructed to ascertain the amount and value of the attached property remaining in kind, and of that which had been purchased subsequent to the levy of the attachments, and after the action of a receiver directed to sell the property, the court, on the reports of those officers, and other evidence in the cause, finally adjudged, in substance—

1st. That the levy of the attachments was valid, and created a subsisting lien on the property as against both E. R. Hart and John P. Hart; and that all of the property levied upon which remained in kind when the sheriff repossessed himself thereof, was still subject to said lien; and that the sum produced by the sales made thereof by the receiver was at least three thousand five hundred dollars, which the court therefore adjudged to the bank.

2d. It appearing that the net proceeds of the residue of the property in the receiver's hands was nine thousand

one hundred and fifty-seven dollars and twenty cents, and the transfer from E. R. Hart to J. P. Hart being, in the opinion of the court, fraudulent, and one half of said fund therefore belonging to E. R. Hart, the court adjudged that the bank, by its proceeding and the levy of its execution on the goods, acquired an exclusive lien on said half of said fund, being four thousand five hundred and seventy-eight dollars and sixty cents, which was accordingly adjudged to the bank, and the remaining sum of four thousand five hundred and seventy-eight dollars and sixty cents was ordered to be distributed *pro rata* among the creditors of E. R. Hart & Brother; and from that judgment this appeal is prosecuted by Howell, Gano & Co.

The first question to be determined is, was there a valid levy of the attachments on the goods in the hardware store? It is insisted for the appellants that the action of the sheriff was not at first such as to constitute a sufficient levy; and if it was, it was released or abandoned by the action of the cashier and agent of the bank. The manner of levying an order of attachment on personal property capable of manual delivery, prescribed in the Civil Code of Practice (*sec.* 228), is not different from that which was required to make a valid levy of a like process on such property before the adoption of the Code. The officer is required to execute the process by taking the property into his custody and holding it subject to the order of the court. But there may be a substantial and even a literal compliance with this directory provision of the Code, without a removal of the property from the place at which the levy is made.

It was said by this court in *McBurnie vs. Overstreet* (8 *B. Mon.*, 300), that "to constitute a valid levy upon such property, the general rule is, that the officer must do such

acts as would subject him to an action of trespass but for the protection of the execution. He has a right to take the property into immediate possession, or he may leave it in the possession of the debtor or any other person ; but the person holding possession after the levy would hold it as the bailee of the officer."

In this case it appears that the sheriff entered the store and levied upon the goods, and, thereupon, by an arrangement between Dallam and J. P. Hart, he was authorized, instead of closing the store or removing the goods,. to leave them in the hands of Hart, but without releasing the levy or lien acquired thereby. As we construe the action of the sheriff, as shown by his return and proved by himself and others, the goods were lawfully in his custody when said arrangement was made between Dallam and Hart, and the latter was in possession of them afterwards as the sheriff's bailee ; and this arrangement, to which Dallam seems to have assented at the urgent solicitation of Hart, did not, in our opinion, discharge the levy or affect its validity.

But it is contended that if the levy was valid, it was only so as to the interest of E. R. Hart in the property, and created no lien on the share of J. P. Hart. We are of a different opinion. J. P. Hart, having sanctioned the levy on the goods, and undertaken to hold the entire stock subject to the plaintiff's lien, and on the faith thereof prevented a further levy on property of E. R. Hart, was estopped from asserting title in himself or controverting the plaintiff's right to enforce the levy on principles of public policy and good faith, and according to a well-established rule of law.

But, although the individual and partnership rights of J. P. Hart were thus concluded by his own acts, and his own interest, as well as that of E. R. Hart in the prop-

erty, was placed in lien by the levy of the attachments, the question is presented, whether the claims of the partnership creditors may not still be enforced in preference to those of the attaching creditors of E. R. Hart; and this leads to an inquiry as to the rights of joint or partnership creditors in comparison with those of the separate creditors of the individual members of a firm. Although, strictly speaking, a creditor has no lien on the partnership effects, yet each partner having a lien for the discharge of all the debts and obligations of the firm, that lien may, in many cases, be made available, through the medium of the partners, for the benefit of the creditors. (*Story on Partnership, sec.* 360; 3 *Kent's Com.,* 65; *Wilson, &c., vs. Soper, &c.,* 13 *B. Mon.,* 411.)

And in *Parsons on Partnership, p.* 345, it is said, in accordance with what seems to be the current of modern adjudication on the subject, that " there is no doubt that creditors of the firm have an equitable preference, or right, which courts of equity enforce;" and it is laid down by the same author (*p.* 353), that " if a private creditor of a partner attaches his interest in any form, his attachment is certainly avoided by the insufficiency of the joint assets to pay the joint debts."

While it is true that a joint creditor of a co-partnership has no lien on the firm effects, and is restricted to the ordinary legal remedies in a direct proceeding against the partners, whenever, through the agency of either partner, the insolvency or dissolution of the firm, he is brought in contest with a separate creditor of an individual member of the firm, equity gives him preference; for the joint creditors must be paid in order to a due administration of justice between the partners themselves. (*Story, supra, sec.* 361.)

We are of the opinion, therefore, that the lien of the bank acquired by the levy of said attachments should only be enforced in subordination to the joint debts of the said firm of E. R. Hart & Brother which were created before the date of said levy, and that the court erred in adjudging to the bank three thousand five hundred dollars as the entire net proceeds of the attached property which came to the receiver's hands.

We concur in the conclusion of the circuit court, that no lien existed under the attachments on the goods acquired after they were levied, and that none was created by the levy of the plaintiff's execution, except as to the interest of E. R. Hart; but we are further of the opinion, that the lien acquired under the execution was subject also to the existing debts of the firm of E. R. Hart & Brother.

In coming to this conclusion, we have disregarded the attempted transfer from E. R. Hart to J. P. Hart as invalid, and of no effect as to the rights of either the bank or the creditors of E. R. Hart & Brother.

It results, from the foregoing conclusions, that the judgment in favor of the bank, both for the sum of four thousand five hundred and seventy-eight dollars and sixty cents, and for three thousand five hundred dollars, must be reversed.

On the return of the cause, the rights of the parties will be adjusted according to the principles of this opinion.

Wherefore, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.