## Springfield Fire & Marine Insurance Company v. Huntington National Bank.

(Decided March 1, 1929.)

(As Modified, on Denial of Rehearing, June 14, 1929.)

DYSARD & MILLER and KIRK, KIRK & WELLS for appellants.

FRED HOWES, for appellee.

Opinion of the Court by Judge Thomas—Reversing in part and affirming in part.

Courtney Combs and his brother, I. M. Combs, were partners operating under the firm name of Combs Bros. On October 17, 1921, they, as such partners, purchased from E. D. Vanhoose a hotel building, the lot upon which it stood, and its furnishings, all located in Paintsville, Ky., for the consideration of $40,000, some of which was paid at the time, some of which was prior lien indebted-

676

ness assumed by them, and the balance of something like $25,000 was evidenced by the note of vendees executed to Vanhoose, wherein they agreed to pay him stipulated amounts annually. The only written evidence of the contract of sale was the deed, including, as we have said, the transfer of the personalty, and in it a lien was retained upon both classes of property for the unpaid consideration due Vanhoose and the liens due from him to his vendor and which Combs Bros. assumed. After the purchase the firm began the operation of the hotel, which was known as the "Van-Will Hotel," and they continued to do so until the fire hereinafter mentioned.

On July 26, 1922, the partnership procured from the four appellants and defendants below (Springfield Fire & Marine Insurance Company, Niagara Fire Insurance Company, Hartford Fire Insurance Company, and Royal Insurance Company) and the Ohio Valley Fire & Marine Insurance Company five separate policies for $7,000 each, indemnifying insured against loss by fire to the hotel building and its contents, and each policy was divided so as to insure the building in the sum of $5,500, and its contents in the sum of $1,500; but before any of the happenings hereinafter mentioned the latter company became bankrupt and it and its liability under its policy are not involved in any of the questions arising on this appeal.

On August 27, 1922 (one month and one day after the issuing of the policies), the insured property was destroyed by fire, and because of defenses that the insurance companies bona fide entertained they declined to pay or acknowledge any liability under their respective policies, and separate actions were filed against them by the members of the partnership and Vanhoose to recover the entire insurance. Appellants interposed therein their defenses, and those actions were pending in the Johnson circuit court on January 11, 1923, when this action was filed by appellee and plaintiff below, Huntington National Bank, against Courtney Combs, one of the partners of Combs Bros., and one J. J. Gillespie, to obtain judgment on a note for $4,000, that the defendants Gillespie and Combs as his surety executed to it on September 19, 1922. Attachment grounds were alleged in the petition, and an order of attachment was issued by the clerk, and appellants were duly summoned as garnishees upon the theory that they were indebted to

Courtney Combs, one of the defendants who signed the note to plaintiff, to the extent of his half interest in the amounts represented by the policies. The garnishees answered, in substance, that Courtney Combs might have some interest in the proceeds of the fire policies if recovery should be had thereon, but that they were not liable on their policies and that for the reasons therein stated they were not indebted to him. After filing such answers, the garnisheed appellants made a settlement of the four suits filed against them by the members of the insured partnership and their vendor, Vanhoose, by the terms of which they paid the latter $26,000 in satisfaction of his unpaid note and interest and had the same transferred to them; the Ohio Valley Fire & Marine Insurance Company, being left entirely out of the transaction because of its insolvency and not paying any part of its policy, it was not made a transferee of that note. The four appellants who made such settlement then filed supplemental answers as garnishees in this case, in which they set up the facts and among other things claimed that they were subrogated as assignees of the Vanhoose note to the lien retained by the latter in his deed executed by him conveying the property to the members of the partnership, and also because they satisfied that partnership debt. They therefore stated in such supplemental answers that they owed the individual member defendant of the partnership nothing.

Plaintiff then filed an amended petition under the provisions of section 227 of our Civil Code of Practice, in which it made the appealing insurance companies defendants and controverted therein their contentions made in their answers as garnishees, and sought judgment against them to the extent of its debt. The issues were made by appropriate pleadings, and upon final submission the court rendered judgment against the four appellants for $750 each, to reverse which they prosecute this appeal, and appellee has obtained a cross-appeal in this court in which it contends that the court erred in not allowing it to recover the full amount of its debt, the judgments in its favor amounting only to $3,000 which was only three-fourths of its note, excluding interest.

As we interpret the record, with the aid of briefs of counsel, the court was of opinion that the insurance companies had the right to be subrogated to the vendor's lien of Vanhoose upon the insured property, and that his lien

attached to the insurance fund after the property was destroyed; but it was of the further opinion that such right of subrogation existed only to the extent of the amount actually paid by the insurance companies to Vanhoose, and that, inasmuch as that sum was less than the entire amount of the insurance, the appellants were liable to plaintiffs for the excess. Furthermore, the trial court seems to have held that the retained lien of Vanhoose in his deed to the partnership never attached to the subsequently acquired personal property put into the hotel by the members of the partnership after they became the owners, and for that reason also the insurance companies, as assignees of the Vanhoose note, had no lien on the amount of the insurance represented by the value of such subsequently acquired personal property and which was covered by the insurance policies.

From the estimates made by the court under its conclusion of law applicable to the facts it rendered the judgments appealed from, and if we should concede that the facts justified a larger judgment under the court's theory of the law that plaintiff bank could subject the value of the destroyed personal property subsequently put into the hotel by the partnership, then we seriously doubt the sufficiency of the evidence to sustain the court's judgment as to the proof of any such fund. No one testified as to the amount, character, or value of any such subsequently acquired personal property, which was additional furnishings to the hotel, except Vanhoose, and he was so indefinite in his testimony as to render the proof entirely speculative upon that issue. But, under our view of the law, as arising from the facts of this record, and hereinafter discussed, we need not determine that issue.

The Vanhoose debt was essentially a partnership one, and the record discloses that there were other outstanding partnership debts greatly exceeding in the aggregate the proceeds of the insurance. The Vanhoose debt itself was more than sufficient to consume the entire collectable insurance, which was four-fifths of its entire amount, the other fifth being represented by the policy of the bankrupt company. Whether the retained lien of Vanhoose in his deed to the partnership and its recordation was sufficient to give constructive notice to plaintiff bank of the lien on the personal property transferred by the deed (it being contended by plaintiff that

it was not) we need not determine, since, under the facts of this case, Vanhoose, as a partnership creditor, had an equitable lien upon, not only the property actually transferred by the deed, but also upon all other property of the firm, though subsequently acquired to the extent' that the other member of the partnership (I. M. Combs) had not relinquished it.

The theory of the common-law lien of partners upon the partnership property for the payment of partnership debts and subrogation rights of partnership creditors to such lien is somewhat confused by both the profession and sometimes by the courts. The right to the lien in favor of partnership creditors is not an inherent one, but only a derivative one through the members of the partnership, and, if the nonobligated partner in the proceedings to subject the partnership assets to the payment of the individual debt of one partner has not in some legal manner waived his rights to have the partnership assets appropriated to the payment of partnership debts before being subjected to the debts of his individual partner, then the partnership creditor may be subrogated to the lien of such nonconsenting and nonwaiving partner, and when done, by the partnership's creditor, the individual creditors of one of the members of the partnership must be postponed until the partnership debts are paid. Some of the many cases from this court in which the law has been so stated and applied are Couchman's Adm'r v. Maupin, 78 Ky. 33; Merkley v. Gravel Switch Roller Mills Co.'s Assignee, 90 S. W. 1059, 28 Ky. Law Rep. 1010; Power Grocery Co. et al. v. Hinton, Assignee, 187 Ky. 171, 218 S. W. 1013; Planters'-Farmers' Warehouse Co. of Louisville v. Citizens' Bank of Falmouth, 224 Ky. 466, 6 S. W. (2d) 720, and other referred to in those opinions.

In the Couchman case the two prior opinions of this court of O'Bannon v. Miller, 4 Bush, 25, and Howell v. Commercial Bank of Kentucky, 5 Bush, 93, were overruled, to the extent that they held that the lien of the partnership creditor was not a derivative one to be enforced by him through the equitable doctrine of subrogation to the rights of other partners, but that it was an inherent one attaching to the partnership creditor independently of any of the rights of all the partners. Those two opinions determined the right of a partnership creditor to assert the common-law lien against part-

nership assets as one belonging to him directly instead of a derivative one through the other member or members of the partnership, and which was contrary to the prior holding of this court in the cases of Pearson v. Keedy, 6 B. Mon. 128, 43 Am. Dec. 160: Wilson v. Soper, 13 B. Mon. 414, 56 Am. Dec. 573; Ely v. Hair, 16 B. Mon. 237, and Jones v. Lusk, 2 Metc. 360. The latter cases properly recognized the correct doctrine of the common law as extending only substitutional or derivative rights to partnership creditors, and the Couchman opinion returned thereto and which position has been consistently followed by this court since that time. That being the general rule upon the subject, and the one prevailing in this jurisdiction, it follows that Vanhoose in this case, as well as all other creditors of the insured partnership, had the right to have the partnership assets (the proceeds of the insurance being such) appropriated to the payment of their partnership debts before plaintiff, an individual creditor of one of the partners, could acquire the right for any such assets to be appropriated to the payment of its debt. The appealing insurance companies were the holders of partnership assets which I. M. Combs (he not having waived his lien) could require to be paid by them to the extinguishment of partnership debts until all of the latter were satisfied, and through him such partnership creditors could exact the same requirement.

But in refutation thereof it is insisted by learned counsel for appellee that no such subrogated right will be extended for the benefit of a stranger who *voluntarily* pays the debt of a creditor to whose rights he seeks subrogation, and the text in 37 Cyc. 375, and 378, and the cases of Suppiger v. Garrels, 20 Ill. App. 625, Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Flannery v. Utley, 3 S. W. 413, 8 Ky. Law Rep. 776; Illinois Surety Co. v. Mitchell, 177 Ky. 367, 197 S. W. 846, L. R. A. 1918A, 931, and Allen v. Perrine, 103 Ky. 516, 45 S. W. 501, 20 Ky. Law Rep. 202, 41 L. R. A. 351, are relied on. The doctrine of the cited cases and the relied-on text undoubtedly embodies the correct principle, but it is seriously doubted if it applies to appellants under the facts of this case, since they, in paying the partnership debt of Vanhoose, did not do so as strangers thereto. In the suits filed against them to collect the insurance, the members of the partnership

*and Vanhoose* were plaintiffs, and the latter insisted therein, not only that he had both a contract and an equitable lien for his debt upon the insurance funds claimed to be owing by appellants, but that they had agreed to so stipulate and to protect it in their respective policies, but had, through oversight or mistake, failed to do so. Under such conditions the settlement of those suits was made in the manner hereinbefore indicated, and, to say the least of it, there is considerable room for argument in favor of the proposition that they paid the debt of Vanhoose, not voluntarily and as strangers thereto, but under compulsion sought to be enforced by the suits that Vanhoose and the members of the partnership had filed against them.

But, however that may be, the appellants in this case are not dependent alone for the assertion of the rights for which they contend upon subrogation arising through the mere payment of the Vanhoose debt. The record uncontradictedly discloses that when they made that payment they took a transfer of the note held by Vanhoose to themselves, and thereby became assignees of it, and they did so under entirely different circumstances and conditions from the case of a garnishee acquiring an outstanding debt due by all the defendants in the suit wherein he was attached, after he was served with the attachment, so as to be enabled to offset that subsequently acquired debt against the claim in his hands and attached by plaintiff in the suit.

If it should be conceded that in that case it would be incompetent for the garnishee to so acquire his offsetting debt against the attached defendant in the action, and to thereby defeat the right of the plaintiff to collect the attached debt due from him to defendant, it would not affect the rights of appellants in this case, since plaintiff never acquired a right to the proceeds of the garnisheed debt superior to the right of the holder of the partnership debt of Vanhoose, and which difference grows out of the principles hereinbefore and hereinafter discussed.

Since, therefore, the partnership debts of Combs Bros. in the aggregate, as well as the single one of Vanhoose which the insurance companies paid and also acquired by assignment, more than consumed the entire proceeds of the insurance, plaintiff and appellee herein was not entitled to judgment against appellants for any amount whatever.

But, independently of any of the foregoing, we think that the law is well settled that plaintiff acquired no lien upon the contested funds by the service of its attachment on appellants. Those funds, as we have seen, were admittedly assets of the partnership and, as we have also seen, were liable, first, to the liquidation of partnership debts before the interest of any partner could be impounded or appropriated to his individual debt. In the case of Metropolitan Life Insurance Co. v. Hightower, 211 Ky. 36, 276 S. W. 1063, 44 A. L. R. 1158, we held that the plaintiff in a garnishment proceeding was only subrogated therein by the service of the process ''to the rights of his debtor as against the garnishee, and that the plaintiff can enforce no right against the garnishee that his debtor could not enforce,'' and which was upon the ground that ''the right of the creditor against the garnishee cannot, by garnishment, rise higher than the right of the debtor against the garnishee.'' Furthermore, we held therein that the decisive test of the liability of the garnishee, as announced by all the cases and authorities, was ''to determine whether or not . . . the principal debtor has a right of action against the garnishee,'' and that '' 'privity between defendant and garnishee is essential to the liability,' and, if there is no such privity'' the fund garnisheed ''cannot be subjected.'' We cited therein the text in 12 R. C. L. 779, par. 8, and 28 C. J. pp. 15, 17, 51, and 93, and the domestic cases of Hays' Ex'r v. Mackin, 4 Ky. Op. 43, and Payne's Ex'r v. Garth, 13 Ky. Op. 302, to which may now be added the case of Kauffman v. Loventhal, 8 Ky. Law Rep. 62.

Under that doctrine the service of the garnishment process in this case gave to plaintiff, as against the appellants as garnishees, only the rights in and to the contested fund that the defendant Courtney Combs as an individual member of the partnership could himself assert against them. Under the doctrine hereinbefore discussed (that partnership funds are to be first applied to the extinguishment of partnership debts) he, at the time of the service of the garnishee process, had no indivdual cause of action against either of the appellants, and could not, in a suit by himself alone, enforce the collection of the policies, nor could he compel the payment of their proceeds to himself, and for that reason the overwhelming weight of adjudication, in both quantity as well as

sound reasoning, state the correct rule to be that the creditor of an individual partner acquires no lien by garnishee process in an action against him individually upon the partnership funds. 28 C. J. 99, sec 127; 12 R. C. L. 798, sec 27; and many cases cited in the notes to those texts.

In the volume of R. C. L., in stating that doctrine, it is said: "But the weight of authority is that, in an action against one of the partners alone, a person indebted to a firm of which such debtor (partner) is a member is not liable as garnishee." In stating the reasons therefor the learned compilers of the text say: "The reason of this rule is that garnishment is essentially a legal proceeding, and not adapted for the ascertainment and settlement of equitable rights between the garnishee and the defendant, and that a court of law has no power to act on the debt, until by an adjustment of the partnership affairs it shall appear whether the defendant has any, and, if so, what interest in the general surplus, or the particular debt. Garnishment is proper, in such cases, after a settlement of the partnership accounts and the ascertainment of the debtor partner's interest, according to some courts. There are obvious objections to an attempt to reach the individual interest of a partner by garnishment in a court having no jurisdiction of the partnership or power to determine the interest of each partner."

The text from Corpus Juris in stating the same general rule says: "On principle, and according to the weight of authority, firm property cannot, prior to dissolution (and settlement) of the partnership, be reached by garnishment in an action against a member of the firm. This rule has been most frequently applied where the property sought to be reached consisted of a debt owing to the firm." In note 25 to that text are cases from 26 different jurisdictions in the Union, and which holdings completely harmonize with the doctrine announced in the Hightower Case, to the effect that the plaintiff in the garnishee action acquires no greater rights to the attached fund, or against the garnishee, than those possessed by the plaintiff's debtor, the defendant in the attachment action. Most excellent reasons in support of that principle are stated in subdivision (a) of note 24 in the volume and page of Corpus Juris referred to, and at the expense of some consump-

tion of space we insert it herein: "(1) 'The best considered authorities hold that a debt due a partnership cannot be garnished by a creditor of one of the partners. The garnishment laws afford no means for ascertaining such partner's interest, and they do not even make other partners parties; the interest of each partner in partnership funds is only what remains after the partnership accounts are taken, and unless upon such an account the partner be a creditor of the fund he is entitled to nothing, and if the partnership be insolvent the same result follows. The effects of the partnership may be wanted to pay its debts, and on a settlement of accounts the particular partner to whose individual indebtedness it is sought to apply, through garnishment, a part of the debt due the firm, may be found to be a debtor to the partnership. The conditions of the partnership and interests of the respective partners are unknown, and the ordinary machinery of a court of law is not only not adapted to the ascertainment of such condition and interests, but an attempt to make them so would prove not only anomalous but also impracticable.' Crescent Ins. Co. v. Bear, 23 Fla. 50, 53, 1 So. 318, 11 Am. St. Rep. 331. (2) 'The reason is that no one partner can have any separate interest in a copartnership debt, if he himself is indebted to the copartnership to an amount which will absorb his proportion; so that his share shall not be taken, until it shall be made to appear that it is free from the lien, of the other partners.' Thorndike v. De Wolf, 6 Pick. (Mass.) 120." See, also, to the same effect, the cases of Fewell v. American Surety Co., 80 Miss. 782, 28 So. 755, 92 Am. St. Rep. 625; Hoaglin v. C. M. Henderson & Co., 119 Iowa 720, 94 N. W. 247, 61 L. R. A. 756, 97 Am. St. Rep. 335, and Braddock v. Gambill (Tex. Civ. App.) 291 S. W. 306.

As we have already said it was shown in this case that, besides the Vanhoose debt, the partnership owed other creditors whose debts, plus the Vanhoose note, far exceeded the entire amount of the insurance involved, or the aggregate sum of all possible assets belonging to the partnership. So that, when those debts were paid there would be nothing going to the individual partners and, therefore, no fund could be realized by the bank at the end of a settlement of the partnership affairs, even if it could acquire a lien as against its defendant on what

might be due him on settlement as one of the members of the partnership.

We therefore see that under no tenable view that may be taken of the facts disclosed by the record was the court authorized to render the judgment appealed from in favor of appellee, and it is reversed on the original and affirmed on the cross appeal, with directions to dismiss the amended petitions against appellants and to discharge them as garnishees.